Argued and submitted October 26, 2004, affirmed September 28, 2005, petition for review denied February 21, 2006 (340 Or 158)

STATE OF OREGON,
*Respondent,*

*v.*

ALDEN TILBERT SMALLS,
*Appellant.*

0205-44742; A119943

120 P3d 506

Stephanie Hortsch, Deputy Public Defender, argued the cause for appellant. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

LINDER, J.

**LINDER, J.**

This appeal from a conviction for driving under the influence of intoxicants (DUII) presents a single issue: If a driver arrested for DUII cannot afford a lawyer, must the state provide a lawyer to that person before requiring him or her to decide whether to take a breath test to determine blood alcohol content? The trial court determined that the constitutional right to counsel does not extend that far and, consequently, denied defendant's motion to suppress evidence of his breath test results. For the reasons we describe below, we affirm.

The facts are straightforward and, as pertinent to the issue on appeal, undisputed. Defendant was arrested for DUII and transported to the police station, where he was asked to take a breath test. Before being asked to take the breath test, an officer read defendant his *Miranda* rights, which included the advice that if defendant could not afford an attorney, one would be appointed for him. After defendant said that he understood those rights, the officer asked if he wanted to attempt to call a lawyer. Defendant, referring to the *Miranda* advice he received, said that he could not afford a lawyer and that he wanted one to be appointed. The officer told defendant that he had no power to do that, but that a lawyer would be appointed for defendant at his first court appearance (*i.e.*, arraignment). The officer did, however, provide defendant with a telephone and a phone book so that he could attempt to contact an attorney if he so chose. Defendant declined, stating again to the officer that he could not afford an attorney and that he wanted one to be appointed. The officer then read defendant the advice from a standardized implied consent form,[1] after which defendant refused to take the breath test.

Before the DUII trial, defendant moved to suppress evidence of his refusal to submit to the breath test. In support of the motion, defendant argued that the Oregon Constitution gives drivers arrested for DUII the right to consult with a lawyer before taking the breath test. According to defendant,

---

[1] *See* ORS 813.130 (describing what rights and consequences must be read to a driver arrested for DUII before being asked to take a breath test).

because the state does not provide lawyers to indigent drivers arrested for DUII, and did not do so for defendant when he requested that a lawyer be appointed for him, the state violated defendant's equal protection rights and the breath test should be suppressed. The trial court denied the motion.

■ On appeal, in challenging the denial of his motion, defendant renews his contention that he was constitutionally entitled to consult with an attorney at state expense before submitting to the breath test. Defendant's argument entails a two-step analysis. First, defendant argues that a driver arrested for DUII has a state constitutional "right to consult with an attorney prior to submitting to a breath test." That premise then leads to the second step in defendant's analysis, which is based on federal law. Relying on *Douglas v. California*, 372 US 353, 83 S Ct 814, 9 L Ed 2d 811 (1963), defendant argues that the state's giving a nonindigent driver the right to consult with an attorney, while "fail[ing] to provide an indigent [person] with the right to consult with a court-appointed attorney prior to a breath test[,] is a denial of equal justice as guaranteed by the Fourteenth Amendment of the United States Constitution."

■ The state's primary response takes issue with the first step in defendant's analysis. According to the state, a driver arrested for DUII has only the limited right to a "reasonable opportunity to obtain legal advice" before deciding whether to submit to the test. The state asserts that no equal protection issue arises for the indigent driver arrested for DUII when, as here, the driver is given a phone book and a telephone, which is the same opportunity to consult with a lawyer that a nonindigent driver is given.[2] Because the issue on appeal is purely legal, our review is plenary. *See State v. Ashley*, 137 Or App 561, 564, 907 P2d 1120 (1995).

Before we can determine whether defendant, who asserted his indigency,[3] was denied his federal right to equal

---

[2] The state also contends that defendant waived that right by taking no steps to contact an attorney, which is an argument that we do not reach.

[3] As we later note, "indigency" for purposes of briefly consulting with a lawyer by telephone before taking a breath test may entail a substantially different financial status than does indigency for purposes of retaining a lawyer to represent a defendant in the trial and all associated pre- and post-trial proceedings. In this case, the parties have not focused on that difference, and the record has not been developed on the point.

protection of the law, we must first determine the parameters of the substantive right to counsel accorded to a driver arrested for DUII. Thus, the starting point in the analysis is the correctness of defendant's state constitutional law premise. Defendant's position, as noted, is that the Oregon Constitution[4] gives a driver arrested for DUII the right to consult with a lawyer before having to decide whether to submit to a breath test. For that premise, defendant relies on *State v. Spencer*, 305 Or 59, 750 P2d 147 (1988), and *State v. Durbin*, 335 Or 183, 63 P3d 576 (2003). As we explain, however, the holdings in those cases are not as broad as defendant believes.

In *Spencer*, the defendant was arrested on a charge of DUII and taken into police custody. After police explained the consequences of refusing to submit to a breath test and asked the defendant if he would submit to the test, the defendant asked to call and consult with his lawyer (apparently, one with whom he already had a lawyer-client relationship) before making a decision. The police refused to permit the defendant to attempt to call his lawyer. The defendant then submitted to the breath test and the results were used as evidence against him in his DUII trial, over his objection. *Spencer*, 305 Or at 61-62.

The Oregon Supreme Court reversed the DUII conviction, holding that a driver arrested and taken into custody on suspicion of DUII has "the right upon request to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test." *Id.* at 74-75. The court concluded that the right to counsel secured by the Oregon Constitution attaches in that circumstance because the arrested driver is involved in a criminal prosecution:

> "A person taken into formal custody by the police on a potentially criminal charge is confronted with the full legal power of the state, regardless of whether a formal charge has been filed. Where such custody is complete, neither the lack of a selected charge nor the possibility that the police will think better of the entire matter changes the fact that

---

[4] Article I, section 11, of the Oregon Constitution provides that, "[i]n all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel * * *."

the arrested person is, at that moment, ensnared in a 'criminal prosecution.' The evanescent nature of the evidence the police seek to obtain may justify substantially limiting the time in which the person may exercise his or her Article I, section 11, right, but it does not justify doing away with it."

*Id.* at 74.

But the right to counsel that the court announced in *Spencer* was a limited one, and the court took pains to emphasize that point. Significantly, the court did not declare that an arrested driver has an absolute *right to consult* with a lawyer before deciding whether to take a breath test. Instead, the court declared expressly that the arrested driver is entitled only to "a *reasonable opportunity* to obtain legal advice" before deciding whether to submit to the test. *Id.* at 74-75 (emphasis added). Thus, the right that the court announced was not a right to insist on obtaining actual legal advice or representation, as in a trial setting, but instead was a right to a reasonable *opportunity* to obtain legal advice.

The precision of the court's focus was reinforced by its discussion of prior opinions in which the court had declined to hold that any constitutional right to counsel attaches in the DUII context before formal charges are lodged against an arrested driver.[5] The court in *Spencer* believed that those earlier holdings were driven by concern that "any expansion of the scope of Article I, section 11, would place the state in the position of being required under the Equal Protection Clause to have appointed counsel available at every place where an intoxilyzer was to be used." *Id.* at 74. But, in *Spencer*, the court deemed that concern unfounded, because it stemmed from a "blurr[ing of] the distinction between a person's right to have *reasonable access* to legal advice with the state's *obligation to provide* an indigent suspect with an attorney at the state's expense." *Id.* (emphasis added). The court considered it doubtful that "the [United States] Supreme Court would take the dictates of *Gideon v. Wainwright*, 372 US 335, 83 S Ct 792, 9 L Ed 2d 799 (1963), and its progeny that far." *Spencer*, 305 Or at 74.

---

[5] *State v. Scharf*, 288 Or 451, 605 P2d 690 (1980); *State v. Newton*, 291 Or 788, 636 P2d 393 (1981).

In the more than 15 years that have passed since *Spencer* was decided, the court has not altered its view of the limited nature of the right to counsel that attaches in the DUII breath test setting. Although defendant relies on the court's more recent decision in *Durbin*, that reliance is misplaced.

In *Durbin*, the defendant was given an opportunity to contact a lawyer before being required to decide whether to submit to a breath test, as *Spencer* requires. Unlike in *Spencer*, the defendant did not already know who he would call. Instead, using a lawyer listing provided by police, he decided to try to call a lawyer for a consultation. After several attempts, he reached one who was willing to consult with him over the phone. While the defendant and the attorney conferred, the arresting officer remained in the room and within earshot. The principal issue presented in *Durbin* was narrow: whether a defendant who avails himself of the opportunity to consult and succeeds in contacting a lawyer is entitled also to consult privately with that lawyer. The court concluded that the answer was yes, because confidentiality is an inherent aspect of a lawyer-client consultation. 335 Or at 190-92.[6] As the court had done in *Spencer*, however, the court again stressed the limited nature of the right to counsel that attaches when a driver arrested for DUII faces a decision to take a breath test. As the court put it, the "right to counsel at *that stage* of the criminal prosecution is not as broad as the right to counsel that an accused enjoys at trial." *Id.* at 189. Rather, quoting *Spencer*, the court in *Durbin* reaffirmed that a driver arrested for DUII has the more limited "right upon request to a *reasonable opportunity* to obtain legal advice before deciding whether to submit to a breath test." *Id.* (citation omitted; emphasis added).[7]

---

[6] A related issue was whether the defendant also had to explicitly request the officer to leave the room and permit him to consult with his attorney privately. The court concluded that no such request was required. *Id.* at 191.

[7] Decisions of this court since *Spencer* similarly have recognized the right to counsel at the breath test stage to be a limited one. *See, e.g., State v. Brazil-Kay*, 137 Or App 589, 596, 907 P2d 1116 (1995), *rev den*, 323 Or 484 (1996) (observing that the "dispositive issue is not whether defendant was successful in contacting an attorney, but whether she had a reasonable opportunity to do so" (emphasis in original)).

Contrary to defendant's position in this case, neither *Spencer* nor *Durbin* declares that a nonindigent driver arrested for DUII has a *right to consult* with a lawyer before deciding whether to take a breath test. Rather, both cases stand for the proposition that a driver arrested on a possible DUII charge and faced with the decision whether to take a breath test has only the significantly more limited right of *a reasonable opportunity* to consult with a lawyer. Thus, the premise of defendant's argument—*i.e.*, that under *Spencer* and *Durbin*, arrested drivers have a right to consult with an attorney before deciding whether to take a breath test—is false.[8]

Defendant's equal protection argument, as advanced both at trial and on appeal, depends on that false premise. Defendant argued to the trial court that, to provide equal protection to indigent drivers arrested for DUII, the state had to "in fact make an attorney available" to defendant, perhaps by securing on-call, 24-hour public defender services for such persons, or by otherwise ensuring that an attorney would be made available to arrested drivers for a brief consultation at any hour of the day or night free of charge. Defendant makes that same argument on appeal.[9] Those arguments, in turn,

---

[8] Defendant does not advance an argument, independently of *Spencer* and *Durbin*, that Article I, section 11, of the Oregon Constitution is the source of a broader right to counsel than those cases announced. Nor has defendant otherwise engaged in the constitutional analysis that would be required for us to examine—assuming that we would be free to do so—the scope of the right embodied in that constitutional guarantee to determine whether it is more expansive than *Spencer* and *Durbin* declared it to be. *See generally Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992) (a court must determine the meaning of a constitutional provision by analyzing the text of the constitutional provision, the historical circumstances that led to its creation, and the case law surrounding it at the time of its enactment).

[9] Defendant points specifically to programs adopted in Vermont and Washington that go to some lengths to provide indigent drivers with legal advice before the drivers submit to a breath test and urges us to require the state to fashion similar programs in Oregon. Defendant's reliance on those programs is problematic, however, because they derive from statutory or court-devised requirements, not from constitutional requirements. *See* Vt Stat Ann title 23, §§ 1202(c), (g) (2004) (providing that a person has a limited right to consult with an attorney and that the "defender general shall provide statewide 24-hour coverage seven days a week to assure that adequate legal services are available to persons entitled to consult an attorney under this section"); Wash Criminal Rules for Courts of Limited Jurisdiction 3.1(c)(2) (at earliest point practical, person who desires a lawyer shall be provided with telephone, phone book, number of public defender, and "any other means necessary to place him or her in communication with a lawyer"). In other

are consistent with what defendant in this case asked police to do. Defendant declined the offer of a phone book and an opportunity to attempt to call an attorney and asked for no other assistance from the officer in that regard, reiterating, instead, that he wanted a lawyer appointed or otherwise provided to him.

Were we to agree that defendant, and other drivers similarly situated, have a right to have a lawyer *provided* to them at state expense, that conclusion would not equalize an indigent driver's right to counsel with the right enjoyed by a nonindigent driver. Indigent arrested drivers instead would enjoy a more expansive right—that of a guaranteed consultation with a lawyer. In effect, under defendant's approach, the equal protection tail would wag the substantive right-to-counsel dog and would blur "the distinction between a person's right to have *reasonable access* to legal advice with the state's obligation to provide an indigent suspect with an attorney at the state's expense," as *Spencer* counseled against. 305 Or at 74 (emphasis added).

That is not to say that an indigent driver arrested for DUII is not entitled to a *reasonable opportunity* to consult with a lawyer before deciding whether to take the breath test. Nor is it to say that an indigent driver is not entitled to state assistance in effectuating that more limited right pursuant to equal protection principles. A nonindigent driver, given a reasonable opportunity to contact a lawyer, may or may not in fact succeed in contacting a lawyer within the relatively short time allotted.[10] By the same token, an indigent driver given a reasonable opportunity to contact a lawyer is not guaranteed an actual consultation with a lawyer. All that is required for both individuals is that they be given an opportunity to contact a lawyer and that the opportunity be a reasonable one.

---

words, the programs that defendant relies on reflect policy choices, not constitutional imperatives; as a result, they are not helpful to defendant's position in this case.

[10] *See Durbin*, 335 Or at 193-94 (state must respect an arrested driver's request to attempt to contact a lawyer at any point before or during the 15-minute observation period before a breath test can be administered).

What constitutes a *reasonable opportunity* for an indigent arrested driver—short of a guaranteed consultation with a lawyer provided at state expense—presents an interesting question, one that has neither been raised nor explored by the parties at any stage of this case. The answer likely will depend on the circumstances involved. For example, it is not obvious what qualifies as "indigency" for purposes of obtaining the legal advice involved (*i.e.*, a brief telephone consultation with a lawyer for the limited purpose of deciding whether to take a breath test). The expense of obtaining such brief and limited legal advice is necessarily less—substantially so—than retaining a lawyer for representation through the full course of a trial. It may be a rare driver who has the means to afford gasoline and other costs involved in operating a car but who lacks the financial ability to bear the cost of a such a consultation. Similarly, it is not obvious what it would mean to provide an "indigent" driver with a reasonable opportunity to contact a lawyer that is equivalent to a nonindigent driver's opportunity, which is the most that federal equal protection principles would require.[11]

---

[11] Defendant relies only on federal equal protection principles as the source of the state's obligation to provide the same access to an indigent driver arrested for DUII as would be given to a nonindigent driver. Often, however, federal equal protection principles do not require equalizing the legal representation opportunities of all defendants based on their economic circumstances. As the United States Supreme Court has cautioned, "the fact that a particular service might be of benefit to an indigent defendant does not mean that the service is constitutionally required. The duty of the State under our cases is not to duplicate the legal arsenal that may be privately retained by a criminal defendant[.]" *Ross v. Moffitt*, 417 US 600, 616, 94 S Ct 2437, 41 L Ed 2d 341 (1974). In the context of a criminal defendant's right to counsel, the Court has been unwilling to require "absolute equality or precisely equal advantages" for the indigent and nonindigent defendant alike. *Id.* at 612 (internal quotations and citation omitted). Instead, equal protection requires that any distinctions between the opportunities for legal representation not be "unreasoned," that indigents have "an adequate opportunity to present their claims fairly within the adversary system," and that the state not adopt procedures that extend to indigents "a meaningless ritual" while persons in better economic circumstances have meaningful procedural and substantive rights. *Id.* (citations omitted); *see also State v. Balfour*, 311 Or 434, 440, 814 P2d 1069 (1991) (summarizing Supreme Court jurisprudence as having recognized "(a) that constitutionally cognizable unfairness or lack of equality results when an indigent appellant is denied meaningful access to the appellate system because of poverty[;] and (b) that absolute equality is not necessarily required, so long as indigent appellants have an adequate opportunity to present claims fairly within the appellate system"). Given the limited nature of the right to counsel afforded an arrested driver facing the decision whether to take a breath test (a reasonable opportunity to contact a lawyer, rather than a right to legal advice) and the uncertainties of a person with

Realistically, even for the arrested driver with the means to pay for legal advice, the odds of success in obtaining that advice may not be good.[12]

But again, what qualifies as a reasonable opportunity for an indigent arrested driver to obtain legal advice before deciding whether to take a breath test is not before us. The question here is only whether the arrested driver has an absolute right to consult an attorney, which, if the answer were yes, would require the state to devise a system to make attorneys available to indigent arrested drivers at state expense. We conclude, however, that the answer is no: The constitution guarantees an arrested driver only the more limited right to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test. The trial court therefore correctly denied the motion to suppress.

Affirmed.

---

economic means actually obtaining that legal advice, *see* 201 Or App at 662 n 12, whether federal equal protection principles would require the state to provide to an indigent arrested driver anything more or different than would be provided to a nonindigent driver (*e.g.*, a telephone and a list of attorneys or a phone book) is open to question.

[12] The fact that an arrested driver is not indigent for purposes of retaining a lawyer for representation at trial says nothing about the driver's practical ability to obtain legal advice on the spur of the moment while in a police station awaiting administration of a breath test. The driver may or may not already have a lawyer-client relationship and have the lawyer's number handy, as apparently was true in *Spencer*, which would provide the best assurance of success in obtaining legal advice. In the case of an arrested driver who must initiate a lawyer-client relationship to obtain legal advice, the driver may or may not have access to a credit card or other source of funds that a lawyer will accept over the phone; the arrest may or may not occur during regular business hours; local lawyers may or may not have 24-hour answering services so that they may be contacted after business hours; lawyers from other geographic areas may or may not provide toll-free numbers that an arrested driver could call without incurring long-distance charges. How well an arrested driver would negotiate those uncertainties and the decisions that they may require is even less predictable in the DUII context, given the probable cause to believe that the arrested driver is impaired by alcohol.