Argued and submitted November 24, 2009, on appeal, reversed and remanded; on cross-appeal, affirmed June 30, petition for review denied October 21, 2010 (349 Or 173)

## STATE OF OREGON,
### *Plaintiff-Appellant*
### *Cross-Respondent,*

*v.*

## DEIDRA COLLEEN GARDNER,
### *Defendant-Respondent*
### *Cross-Appellant.*

Crook County Circuit Court
MI070821; A139006

236 P3d 742

Patrick M. Ebbett, Assistant Attorney General, argued the cause for appellant - cross-respondent. On the opening brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Sally L. Avera, Senior

Assistant Attorney General. On the reply brief were John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Jamie K. Contreras, Assistant Attorney General.

Kristin A. Carveth, Deputy Public Defender, argued the cause for respondent - cross-appellant. With her on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

**SCHUMAN, J.**

In this driving under the influence of intoxicants (DUII) case, the trial court suppressed a statement by defendant that she would refuse to take a breath test because, having consumed two glasses of wine, she feared that she would not pass. According to the trial court, defendant's statements were inadmissible because police officers did not give her *Miranda* warnings. The state appeals. ORS 138.060(1)(c). Defendant cross-appeals, arguing that police did not have probable cause to arrest her. We reverse and remand on appeal and affirm on cross-appeal.

The facts are not in dispute. Officer May, on patrol near Prineville, received a report from a citizen complainant who indicated that a white Ford pickup truck was swerving in its lane and repeatedly activating its left turn signal without ever turning. May intercepted the truck and began following it. He saw it weaving within the lane, then crossing over the fog line, and then correcting sharply. This particularly concerned May because the roads were icy.

May turned on his overhead lights and defendant pulled to the side of the road, then drove over 400 feet before coming to a stop. May approached her truck, explained to defendant why she had been pulled over, and asked for her license, registration, and proof of insurance. Defendant appeared confused during the encounter, and initially tried to give May her checkbook instead of her identification. He noticed that her eyes were glassy, her pupils were dilated and nonreactive to light, and her speech was choppy and nonresponsive. May ultimately obtained defendant's name and date of birth, instead of her identification, and returned to his car to run a record check on her. It came back clear.

When May returned to defendant's truck, he asked her to perform field sobriety tests. She refused. After May told her the consequences of a refusal and renewed his request, she refused again. May then arrested her for DUII, ORS 813.010, and took her to the local jail. When they arrived there, May—without giving defendant *Miranda* warnings—asked her if she would take a breath test and advised her of her right to refuse. Defendant asked May to explain what would happen if she refused, and he told her

that a refusal could subject her to suspension of her license. She then asked what would happen if she was found guilty of DUII. He replied that there were different outcomes and options but that he could not tell her what the best choice was. Defendant repeated her questions two or three times before May directly asked her if she would consent to the test "right now." Defendant responded, "I am afraid I will fail because I drank two glasses of wine, so I am going to refuse." Defendant was then cited for DUII.

At trial, defendant filed a motion to suppress her refusal and statement, arguing that she was arrested without probable cause and that May failed to give her *Miranda* warnings before asking her to take the breath test. The trial court rejected the probable cause argument but agreed with defendant regarding her statements in response to May's question about the breath test. The court found that,

> "although her response very well might not be a part of a specific question other than, will you take the Intoxilyzer; the burden is on the State to prove that the statement made by [defendant] was voluntary. There is no question that she was currently in custody and under arrest for Driving Under the Influence of Intoxicants. She was asked on several occasions by [May] whether or not she would take the [breath test]. * * * The Court finds that the State has not proven that the admission made of drinking two glasses of wine was made voluntarily and orders that the admission be suppressed."

The state appeals the trial court's ruling suppressing defendant's statements, and defendant cross-appeals the court's ruling on probable cause.

■  We reject defendant's cross-appeal. Defendant's erratic driving, evident confusion, and physical symptoms described above are more than adequate to create probable cause to believe she was driving while intoxicated.

■  Although the court's ruling suppressing defendant's statements is worded in terms of voluntariness, the court ruled in response to defendant's argument based on failure to administer *Miranda* warnings. The two inquiries—whether defendant's statement was voluntary and whether she received *Miranda* warnings—are not necessarily the same.

Involuntary or coerced statements that result from custodial interrogation are inadmissible. A statement may be involuntary because a defendant's will is overborne or, presumptively, because the defendant did not receive *Miranda* warnings. *State v. Vu*, 307 Or 419, 424-25, 770 P2d 577 (1989). In the present case, defendant's only argument on appeal is that she had a right to *Miranda* warnings and, because the state violated that right, her subsequent statements were presumptively involuntary and were therefore correctly suppressed. She does not argue that her will was overborne by coercion.

■ As a general rule, officers are required to give suspects *Miranda* warnings when they are subject to custodial interrogation. *Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966); *State v. Fish*, 321 Or 48, 84, 893 P2d 1023 (1995) (Graber, J., concurring in part and dissenting in part). In this case, there is no dispute that defendant was in custody for the purposes of *Miranda* when May asked her to take the breath test. The only issue is whether the officer's request constituted an "interrogation." That issue arises with respect to two aspects of defendant's response to the request: her statement that she had consumed two glasses of wine and her statement that she would not take the breath test.

■ Oregon has adopted, for the purposes of Article I, section 12, of the Oregon Constitution the definition of interrogation set out in *Rhode Island v. Innis*, 446 US 291, 100 S Ct 1682, 64 L Ed 2d 297 (1980). *See State v. Bradbury*, 80 Or App 613, 616, 723 P2d 1051, *rev den*, 302 Or 342 (1986) (adopting *Innis*'s definition of interrogation). Under that definition,

> "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."

*Innis*, 446 US at 301 (footnote omitted). Thus, some questions are not "interrogation" (questions normally attendant to arrest and custody) and some nonquestions are (statements

that police should know are reasonably likely to elicit an incriminating response).

In *State v. Cunningham*, 179 Or App 498, 502, 40 P3d 535, *rev den*, 334 Or 327 (2002), we implicitly adopted the United States Supreme Court's explanation of what questions are "normally attendant to arrest and custody." In *South Dakota v. Neville*, 459 US 553, 564 n 15, 103 S Ct 916, 74 L Ed 2d 748 (1983), the Court explained that a "police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda*" because it is a question "normally attendant to arrest and custody." The Court reasoned that the question came within the exception because it was highly regulated by state law and presented in virtually the same words to all suspects. *Id.* Thus, even if we were to conclude that the officer's question asking whether defendant would take the breath test was intended and likely to elicit an incriminating statement—ORS 813.095(1) creates the offense of refusing to take a breath test—the question is not "interrogation" for purposes of *Miranda* because it is part of the normal process of arrest and custody.

■ Defendant argues that, because May's colloquy went beyond what is normally presented to other suspects," the encounter differed significantly from that which is "normally attendant to arrest and custody." We disagree. Nothing requires a police officer to read a warning verbatim. ORS 813.100, the implied consent law, is designed to overcome the possibility of physical resistance of a suspected driver, despite legal consent, without resorting to physical compulsion by imposing adverse legal consequences on a refusal to submit to the test. *State v. Spencer*, 305 Or 59, 71, 750 P2d 147 (1988). In this case, due to defendant's confusion—evidenced by her inability to locate her identification, trying to give the officer her checkbook, and choppy, nonresponsive interaction with the officer—it was reasonable for May to engage her in colloquy in order to ensure that she understood the consequences of a refusal. We conclude that the court erred in suppressing evidence of defendant's refusal to submit to the breath test.

■ We reach a similar conclusion with respect to her statement that she had consumed two drinks. Nothing in May's conversation with defendant could be regarded as likely to elicit that statement. "[S]ince the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Innis*, 446 US at 301-02 (emphasis in original) (footnote omitted).

To summarize: Defendant's statement that she would not take the breath test was not a response to "interrogation" for purposes of *Miranda* because the question that elicited the response was part of the normal arrest and booking procedures. Her statement that she had consumed two drinks was not a response to "interrogation" for purposes of *Miranda* because the question that elicited that response was not a question that the police officer should have known would elicit that response. The trial court therefore erred in suppressing the statements.

On appeal, reversed and remanded; on cross-appeal, affirmed.