Argued and submitted February 24, 2015, affirmed January 27, petition for review allowed May 26, 2016 (359 Or 667)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**ANDREW A. SWAN,**
*Defendant-Appellant.*

Multnomah County Circuit Court
130242160; A154526

*366 P3d 802*

Kali Montague, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General.

Before Armstrong, Presiding Judge, and Egan, Judge, and Nakamoto, Judge pro tempore.

NAKAMOTO, J. pro tempore.

**NAKAMOTO, J. pro tempore**

This criminal appeal concerns the partial denial of defendant's motion to suppress evidence. Defendant was convicted of driving under the influence of intoxicants (DUII), ORS 813.010 (Count 1), and reckless driving, ORS 811.140 (Count 2). Before trial, the court determined that a law enforcement officer impermissibly interrogated defendant without an attorney present, a violation of defendant's right against self-incrimination under Article I, section 12, of the Oregon Constitution.[1] As a result, the trial court suppressed some of defendant's statements.

However, the trial court declined to exclude evidence of defendant's blood alcohol content (BAC), which the officer obtained when defendant agreed to take a breath test. Defendant assigns error to that ruling, arguing that the BAC evidence should have been suppressed because (1) the officer asked defendant to take a breath test after he had invoked his right to counsel and (2) defendant agreed to take the breath test only after the officer, without intervening circumstances, had violated his right to be free from custodial interrogation under Article I, section 12. We affirm, concluding that the trial court did not err in denying defendant's motion to suppress the BAC results because (1) the officer did not violate defendant's right against self-incrimination under Article I, section 12, by asking defendant to submit to a breath test and (2) the BAC results were not derived from a prior constitutional violation.

## I. FACTS

We review the denial of a motion to suppress for errors of law and are bound by the trial court's factual findings that are supported by sufficient evidence in the record. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). In this case, the trial court made certain factual findings concerning the motion to suppress. In describing the pertinent events, therefore, we draw from those express findings, together with other undisputed facts contained in the record and reasonable inferences consistent with the trial court's ruling.

---

[1] Article I, section 12, of the Oregon Constitution provides, in part, "No person shall * * * be compelled in any criminal prosecution to testify against himself."

*See Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968) (in the absence of express findings, we generally presume that the trial court decided disputed factual issues consistently with its ultimate conclusion).

Officer Enz, who was working the graveyard shift, received a call from precinct officers requesting assistance with a traffic crash investigation. When he arrived on the scene, Enz quickly spotted defendant's car. When Enz approached the vehicle, he noticed that defendant was still seated in the driver's seat. Before Enz knocked on the window to draw defendant's attention, Enz observed that defendant had his eyes closed and that defendant's head kept bobbing forward. In response to Enz's knocks, defendant attempted to roll down the window. After several failed attempts to locate the window lever, defendant opened the door. Enz explained to defendant why he had responded to the scene and asked defendant what had happened to his car, pointing at the damage to the right front quarter panel. Defendant responded that he had "clipped a car."

At that point, Enz believed that defendant was under the influence of intoxicants based on defendant's slurred speech and watery and bloodshot eyes, coupled with an odor of alcohol emanating from defendant. Enz explained to defendant that, based on his observations and the fact that defendant had admitted to driving, Enz believed that he had probable cause to investigate defendant for DUII. Enz described the standardized field sobriety tests (FSTs) and asked defendant if he would consent to perform the tests. In response, defendant requested an attorney. Enz told defendant that, if he had a cell phone, he could call an attorney from his car. Enz let defendant make his call and went to take measurements of the crash scene. Defendant had privacy for approximately 11 minutes.

When Enz returned, he asked defendant again if he "would like to perform the voluntary field sobriety tests." Enz again described the FSTs while defendant repeated into the phone everything that Enz said. Defendant then consented to perform the FSTs. Enz did not confirm with whom defendant was talking on the phone.

Enz and defendant then moved to a nearby sidewalk for the FSTs. On the way, Enz observed defendant "sway" and "stagger." Enz administered three FSTs, which defendant failed. Enz told defendant that he was under arrest for DUII and placed him in handcuffs.

Immediately thereafter, Enz read defendant his *Miranda* rights. When asked if he understood them, defendant responded, "NO! I want to talk to my lawyer." Enz told defendant that he would have another opportunity to consult with someone privately when they got back to the precinct. Defendant then stated, "Yes, I understand my rights."

Enz transported defendant to the precinct, where he was placed in a cell. Enz provided defendant with defendant's cell phone, a landline, a phone book, and a copy of the implied consent form that advised defendant of the rights and consequences related to taking or refusing a breath test. Enz told defendant that he could make as many calls as he liked to whomever he liked and that he would be closing the cell door to provide him with privacy while he was on the phone. Before leaving, Enz also explained the implied consent procedure.

Approximately 20 minutes later, Enz returned. He discovered defendant was still on the phone, so Enz advised him that he would give him another minute or so to complete his call. When Enz checked on defendant again, several minutes later, defendant was finishing his call.

Enz then escorted defendant into the Intoxilyzer room and began the 15-minute observation period preliminary to a breath test. During the observation period, Enz asked defendant a series of questions to complete a DUII Interview Report. Before proceeding, Enz explained the DUII interview process and told defendant that, if he did not wish to answer any of the questions, he did not have to. The questions included, "What kind of alcohol did you drink: beer, wine, or mixed drinks?"; "What size were the drinks?"; and "What time did you stop drinking?" During the course of the interview, defendant specifically declined to answer at least one of the questions, concerning who was driving.

After the interview, Enz read defendant the implied consent rights and consequences and asked whether defendant would take the Intoxilyzer breath test. In response, defendant stared at him and started reading the implied consent form. Enz told defendant that he would have a moment to think about it and that Enz would ask again once the instrument was ready for a breath sample. At that point, defendant asked to speak with his attorney before answering the question. Enz told defendant that he already had had ample time to consult with someone for legal advice both at the scene and at the precinct—more than half an hour. When Enz asked again if defendant would take the breath test, defendant answered, "Yes." The breath test showed that defendant's BAC was .18.

Defendant was charged with driving under the influence of intoxicants, ORS 813.010, and reckless driving, ORS 811.140.[2] Before trial, defendant filed motions to suppress "any and all evidence obtained" but argued in his memoranda of law that the court should suppress his "statements." As relevant to this appeal, defendant asserted that, because he had invoked his constitutional rights to counsel under Article I, section 12, the officer thereafter was obligated not to interrogate him except through counsel, and that his right to counsel under Article I, section 11, of the Oregon Constitution was violated. Article I, section 11, provides, in part, "In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel[.]" Under that section, "an arrested driver has the right upon request to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test." *State v. Spencer*, 305 Or 59, 74-75, 750 P2d 147 (1988).

At the suppression hearing, the state stipulated that defendant unequivocally invoked his right to counsel and that defendant never withdrew that invocation. The state also stipulated that the questions in the DUII interview, and their answers, should be suppressed.

The parties then addressed the admissibility of defendant's BAC. Defendant framed the issue for the court this way:

---

[2] The state also charged defendant with second-degree criminal mischief, ORS 164.354, but that count was dismissed.

"Did he invoke? Yes.

"What's the effect of the invocation? That * * * all questioning should cease.

"What's the effect of the questioning[] and does that lead to further evidence? Yes.

"And, so I think that all flows from the questioning. I think the biggest issue is the last issue of whether or not that would stop the field sobriety tests for instance or the breathalyzer test."

For its part, the state argued that the breath test "would be admissible evidence following an invocation, so long as the person is provided a reasonable opportunity to obtain legal advice" in satisfaction of the requirement under Article I, section 11. The state argued that Enz provided that opportunity to defendant, a point that defendant contested.

The trial court partially agreed with defendant, concluding that the officer had violated defendant's Article I, section 12, rights by questioning him without an attorney present. The trial court explained that "defendant had properly invoked his right to counsel. And therefore, following that invocation, any custodial questioning initiated by the police should be suppressed." The court suppressed the questions and responses from the DUII interview.

Regarding the BAC evidence, the court concluded that defendant had been provided with a reasonable opportunity to consult with counsel and, therefore, there was no constitutional violation in asking defendant to submit to the breath test. For that reason, the trial court refused to suppress the BAC evidence:

"I have also reviewed the case law about what right to counsel attaches with respect to submitting to a breathalyzer test. * * *

"So to the extent that I don't have the case law in front of me, but I think that the applicability of the standards articulated by the Oregon Supreme Court in *State v. Spencer*, 305 Or 59 * * *, which was then applied in *State v. Smalls*, 201 Or App 652, [120 P3d 506 (2005), *rev den*, 340 Or 158 (2006)] * * * applies. An arrested driver does not have an absolute right to consult with a lawyer before deciding

whether to take a breath test. *** Rather, what the driver has, is a right to a reasonable opportunity to obtain legal advice.

"I'm specifically finding that that opportunity *** was provided. There was no violation—no constitutional violation in asking the defendant to submit to *** the breathalyzer."

Following the trial court's ruling on defendant's motion to suppress, defendant waived the right to a jury and proceeded with a bench trial on stipulated facts. The trial court found defendant guilty as charged.

## II. ANALYSIS

On appeal, defendant "acknowledges that Enz did not violate his Article I, section 11, right" and abandons his argument that the trial court should have suppressed the BAC result for that reason. Rather, defendant argues that the trial court should have suppressed all the evidence, including the BAC evidence, derived from the violation of his rights under Article I, section 12. In short, defendant's argument on appeal is that he had a right to counsel during custodial interrogation to prevent self-incrimination and, because the officer violated that right by asking him questions designed to elicit incriminating statements during the DUII interview and then by asking him to take the breath test as well, his affirmative response and the breath test result were derived from that violation.

A.  *Preservation*

We begin with the issue of preservation. The parties are at odds over whether defendant preserved his argument on appeal that evidence of his BAC should have been suppressed because his breath test "derived" from the officer's violation of defendant's right against self-incrimination. The state contends that defendant "never articulated that theory of suppression below" or, at least, "in a manner that was sufficiently clear for the trial court and the state to understand the claim he was making." Defendant responds that, by orally moving to suppress all evidence derived from the violation of his right against self-incrimination, including

defendant's statements and the breath test results, he preserved his argument. We agree with defendant.

As a general rule, a party must first raise an issue in the trial court before challenging the trial court's ruling concerning the issue on appeal. *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000); *see* ORAP 5.45(1). Two major policies underlie the rule of preservation: judicial efficiency and fairness. *See Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008). The point, as the Supreme Court has explained, is "whether a party provides sufficient information to enable opposing parties to meet an objection and the trial court to avoid error." *State v. Walker*, 350 Or 540, 550, 258 P3d 1228 (2011). In this case, defendant's argument below sufficiently served those policies.

At the suppression hearing, defendant repeatedly clarified the substance of his motion, stating that he was seeking to suppress any "statements" from the DUII interview and all follow-up questions and "derivative evidence from those statements," including "the breath test confirmation that he would take a breath test." After the court sought additional clarification from defense counsel on whether he was asking the court to suppress the breath test result, defense counsel explained that the breath test result "would have to be suppressed as fruit of the poisonous tree." Defendant also argued that the breath test result should be suppressed because "it's derived from the answer, yes, I'll take the breath test." The state objected that defendant had not made the argument in his pretrial motion but later stated that it was prepared for defendant's argument. Given defendant's arguments at the suppression hearing, defendant sufficiently preserved his arguments for appeal.

B.  *Motion to Suppress*

We turn to the merits. Based on two different theories concerning the violation of his rights under Article I, section 12, defendant urges that we must reverse the trial court's ruling denying his motion to suppress evidence of his BAC. We reject the legal premise of his first theory as unsound. And although we accept his second legal theory, we affirm based on factual differences between this case and our precedent.

## 1. *Custodial interrogation*

Article I, section 12, includes a "derivative right" to counsel during custodial interrogation. *State v. Scott*, 343 Or 195, 200, 166 P3d 528 (2007). According to defendant, the breath test results derived from a violation of that right when Enz asked him to take the breath test while he was in custody.

To determine whether the police have violated a suspect's right against self-incrimination and the right to counsel in cases such as this one, courts consider (1) whether the suspect was subject to custodial interrogation; (2) whether the suspect invoked the right to counsel in an equivocal or an unequivocal manner; and (3) in some cases, whether the suspect waived a prior invocation of the right to counsel. *See, e.g., State v. Acremant*, 338 Or 302, 321-22, 108 P3d 1139, *cert den*, 546 US 864 (2005) (demonstrating inquiry). Defendant's argument assumes that, by asking him if he would take a breath test after he had invoked his right to counsel, the officer interrogated him without counsel in violation of Article I, section 12. But that assumption is invalid because the officer's request did not constitute interrogation.

We have unequivocally rejected the proposition that asking a person to take a breath test is "interrogation." *State v. Higley*, 236 Or App 570, 573, 237 P3d 875 (2010); *State v. Gardner*, 236 Or App 150, 154-55, 236 P3d 742, *rev den*, 349 Or 173 (2010) ("[Q]uestions normally attendant to arrest and custody are not interrogation[.]"); *State v. Cunningham*, 179 Or App 498, 502, 40 P3d 535, *rev den*, 334 Or 327 (2002). *See also South Dakota v. Neville*, 459 US 553, 564 n 15, 103 S Ct 916, 74 L Ed 2d 748 (1983) ("police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda*" because it is a question "normally attendant to arrest and custody"). Enz's question—whether defendant would take the breath test—was not "interrogation" because it was part of the "normal arrest and booking procedures." *Gardner*, 236 Or App at 156. The officer did not violate defendant's right against self-incrimination under Article I, section 12, by asking defendant to submit to a breath test.

## 2. *Derivative evidence*

Defendant's second argument is that the breath test result derived from the violation of defendant's rights against self-incrimination recognized by the trial court, *i.e.*, Enz's questions and defendant's responses during the DUII interview. For that argument, defendant relies on *State v. Vondehn*, 348 Or 462, 236 P3d 691 (2010), and *State v. Jarnagin*, 351 Or 703, 277 P3d 535 (2012), cases arising in the context of the failure of police to provide the defendants with *Miranda* warnings. Defendant contends that, just as in those cases, the state is precluded from using any evidence—statements, physical evidence, or a breath test result—that is derived from an Article I, section 12, violation.

After briefing in this case was completed, we decided *State v. Koch*, 267 Or App 322, 341 P3d 112 (2014). As in this case, *Koch* involved custodial interrogation of the defendant after he had invoked his right to counsel, in violation of Article I, section 12. And, as in this case, the defendant in *Koch* argued on appeal that any evidence that was derived from that violation, including test results, should be suppressed in accordance with the Supreme Court's analysis in *Jarnagin*. We agreed with that argument, and our decision in *Koch* informs this case.

In *Koch*, the defendant appealed a judgment of conviction for DUII, arguing, among other things, that the trial court erred in denying his motion to suppress urinalysis test results that were obtained after officers violated his rights under Article I, section 12. In *Koch*, we explained that, for purposes of determining whether disputed evidence "'derives from or is the product of'" an Article I, section 12, violation, we look to the "'totality of the circumstances'" analysis employed in *Jarnagin*. *Koch*, 267 Or App at 328 (quoting *Jarnagin*, 351 Or at 713, 716-17). We concluded that, under the totality of the circumstances, the urinalysis result derived from a constitutional violation and the trial court's error was not harmless; accordingly, we reversed. *Id.*

In *Jarnagin*, the Supreme Court explained that, in determining "whether physical or testimonial evidence

derives from or is the product of an earlier [Article I, section 12,] violation," we consider: (1) "the nature of the violation"; (2) "the amount of time between the violation and any later statements"; (3) "whether the suspect remained in custody before making any later statements"; (4) "subsequent events that may have dissipated the taint of the earlier violation"; and (5) "the use that the state has made of the unwarned statements." 351 Or at 716-17 (citations omitted). "The inquiry is a fact-intensive one—whether, considering all the circumstances, a defendant's later decision to speak to officers is sufficiently a product of an earlier [Article I, section 12,] violation that suppression is necessary to vindicate the defendant's Article I, section 12, rights." *Id.* at 717. As explained below, this case differs on its facts from *Koch*, and the totality of the circumstances analysis weighs against suppression of the breath test results.

Following *Jarnagin*, we begin by considering the nature of the violation that occurred before Enz obtained defendant's BAC. The officer gave defendant *Miranda* warnings but failed to cease questioning him after defendant requested to speak to an attorney. In particular, the officer conducted a DUII interview in the Intoxilyzer room. The officer's questioning of defendant concerning his alcohol consumption and driving based on the "DUII Interview Report" form was in clear violation of Article I, section 12. However, the officer did not conduct the interview in a coercive manner. The officer testified that he informed defendant that, "if he didn't wish to answer any of [the DUII interview report] questions he didn't need to." The record shows that defendant accepted the officer's invitation because defendant decided not to answer at least one question.

As noted earlier, Enz's subsequent question to defendant regarding whether he would consent to the breath test was not interrogation. And, Enz had provided defendant with ample time to consult with an attorney before the interview, as the trial court found, and as defendant now concedes. The state explains that the officer was scrupulous in his compliance with Article I, section 11, and that the officer was mistaken in construing defendant's request to speak to a lawyer before consenting to the breath test as an invocation of his rights under Article I, section 11, rather

than as an invocation of his rights under Article I, section 12. The record is consistent with that explanation.

The flagrant violation in *Koch* is in contrast to Enz's violation in this case. In *Koch*, following the defendant's request to speak to an attorney, the police denied the defendant any opportunity to speak to an attorney. In fact, the officers told the defendant that he was not entitled to that and "repeatedly questioned" him in an Intoxilyzer room. 267 Or App at 324, 332. "That questioning, including the rigorously structured and 'focused' context of the DRE [Drug Recognition Evaluation] interrogation, elicited patently inculpatory responses."[3] *Id.* at 332. In this case, in contrast, defendant had access to a lawyer twice, the officer told defendant that he did not have to answer the questions, and, as the state suggests, the circumstances are such that the officer, who afforded defendant the means, privacy, and time to consult with his attorney, wrongly treated the questioning based on the DUII Interview Report as part of the breath test protocol. Thus, we view the clear violation of defendant's Article I, section 12, right here as less egregious than the violation in *Koch*.

Regarding *Jarnagin*'s second consideration, we note that the amount of time that elapsed between the violation and the point at which the police obtained the breath test result was brief. Additionally, defendant remained in custody during the entire time, although, as noted above, he was not subject to interrogation when asked to submit to a breath test. In that respect, this case presents a strong temporal nexus similar to the one in *Koch*, where the unlawful questioning occurred intermittently throughout the encounter, including, significantly, just before the defendant gave the urine sample. *Koch*, 267 Or App at 333. In this case, the unlawful questioning occurred just before defendant took the breath test.

However, unlike the situation in *Koch*, in this case there was a short, yet significant, break between the

_____

[3] A DRE is a 12-step procedure by which officers detect the probable source of a driver's impairment. It includes urine testing, blood alcohol content analysis, physical tests and checks, as well as "a focused interrogation and observation of the subject's behavior." *State v. Sampson*, 167 Or App 489, 493-95, 6 P3d 543, *rev den*, 331 Or 361 (2000).

violation and the procurement of the breath test results sufficient to break the causal chain between the two events. *Jarnagin*, 351 Or at 718 (recognizing that "a change in time and circumstances can be sufficient to dissipate the effects of an earlier [Article I, section 12] violation"). In between the DUII interview and defendant's assent to the breath test, the officer read defendant the implied consent rights and consequences. Defendant had a copy of the implied consent form advising him of the rights and consequences related to taking or refusing a breath test, which he read. Defendant also had a few minutes to think about his decision while the Intoxilyzer breath test instrument was starting up.

With respect to "whether the suspect remained in custody" during the relevant time frame, the third *Jarnagin* factor, *id.* at 716, the circumstances here weigh in favor of suppression. Defendant was in custody—under arrest—while the officer conducted the DUII interview and when defendant took the breath test.

In this case, the fourth consideration pertaining to "subsequent events that may have dissipated the taint of the earlier violation," *id.*, weighs against suppression. Indeed, the officer testified that he provided defendant with the implied consent information necessary to make an informed choice concerning the breath test at two different times: first, when defendant arrived at the precinct, before defendant had over 20 minutes to consult with an attorney, and second, after the officer conducted the DUII interview. The record indicates that, after the interview, Enz read defendant the implied consent information. Then, defendant read the implied consent form himself while the breath test instrument was starting up.

In striking contrast, in *Koch*, the state adduced no evidence of what the police had said to the defendant before collecting the urine sample. 267 Or App at 333. The officer who obtained the urine sample did not testify at the suppression hearing. *Id.* at 333 n 11. We noted that there was no evidence that the defendant was given the implied consent information necessary to make an informed choice concerning the urine test. Thus, unlike in *Koch*, in this case, the state established a subsequent event that "intervened to

break the causal chain" between the violation and the later obtained breath test results. *Jarnagin*, 351 Or at 718.

We finally consider, under *Jarnagin*, what use, if any, the police made of the suppressed statements in obtaining the breath test results. *See id.* (emphasizing correspondence between unlawfully elicited statements and subsequent evidence). Defendant's argument is particularly unavailing in light of that factor. The state argues that the request for consent to the breath test was not prompted by the statements that were suppressed but, instead, by lawfully obtained evidence, particularly the officer's observations of defendant's impairment. The record supports an implicit trial court finding to that effect. Enz first observed defendant in the car, nodding off at the wheel, and then fumbling to open the car window when Enz rapped on it. Enz soon believed that defendant was under the influence of intoxicants based on defendant's slurred speech, watery and bloodshot eyes, and the odor of alcoholic beverage emanating from defendant. Later, Enz observed defendant sway and stagger as he walked to the sidewalk where Enz was going to administer the FSTs. Enz concluded that he had probable cause to arrest defendant and did so after defendant failed all three FSTs. After their arrival at the precinct, Enz explained the implied consent process to defendant, and defendant had an opportunity to call his attorney. Enz then began the 15-minute observation of defendant in the Intoxilyzer room before conducting the interview. Thus, Enz did not have the information from defendant's responses to the DUII questions before Enz had signaled his intention to ask defendant to take the breath test and before Enz had already taken steps needed to administer the breath test.

Ultimately, the overarching question is whether, "considering all the circumstances," a defendant's later decision—in this case, to take a breath test—is "sufficiently a product of" the Article I, section 12, violation that "suppression is necessary to vindicate the defendant's Article I, section 12, rights." *Jarnagin*, 351 Or at 717. The record in this case supports the trial court's implicit finding that defendant's decision to consent to the breath test was not a product of the earlier constitutional violation, even though the two events happened close in time. Unlike in *Koch*,

where the unlawful questioning and request that the defendant take the urine test were blended into one continuum, and where the police denied the defendant any opportunity to speak with his attorney, here, in the totality of the circumstances, defendant's post-invocation admissions were not intertwined with the police seeking, and obtaining, the breath test results.

In sum, we conclude that defendant's decision to consent to the breath test and the breath test result—defendant's .18 BAC—were not a product of the earlier Article I, section 12, violation such that suppression of the evidence is required to vindicate defendant's right. *Jarnagin*, 351 Or at 717. Thus, the trial court did not err in denying defendant's motion to suppress evidence of his BAC.

Affirmed.