WATERMAN, Justice.
Iowa Code section 804.20 (2013) provides a limited statutory right to counsel that allows persons who have been arrested to make phone calls to lawyers or family members and to meet alone and in private with their lawyer at the place of detention. While the statute allows private (in-person consultations, it permits the police officer or jailer to be present for the detainee’s phone calls. We must decide whether this statute is unconstitutional as applied to a person arrested, but not yet formally charged, for operating a motor vehicle while intoxicated (OWI) who wants to speak privately by phone with a lawyer before deciding whether to submit to a chemical breath test.
The defendant in this case, detained for suspicion of drunk driving, was at the police station on the phone with a lawyer getting advice regarding the implied-com-sent procedure[1] and his time-sensitive de-cisión whether to refuse the breathalyzer test. The arresting officer declined the defendant’s request for privacy during the phone call but told the defendant he could have privacy if the lawyer came to the station. No lawyer arrived in time, and the defendant submitted to the test, which showed his blood alcohol level at .140. Eleven days later, the State charged him with OWI, and he moved to suppress the test result, claiming he was entitled under article I, section 10 of the Iowa Constitution to a private phone consultation with counsel before chemical testing. The district court disagreed, and he was convicted. We retained his appeal.
For the reasons explained below, we conclude that the right to counsel under the Iowa Constitution, as under the Sixth Amendment to the United States Constitution, doés not attach until formal criminal charges are filed and had not attached at the time this defendant was asked to submit to the chemical breath test. Most other state supreme cbürt decisions are in accord. Because no Iowa or federal constitutional right to counsel was violated and the defendant’s limited statutory right to counsel was honored, we affirm the district court’s judgment of conviction.
I. Background Facts ánd Proceedings.
In the early morning hours of Labor Day, September 1, 2014, Officer Brian Cuppy was on patrol in downtown Des Moines when he saw a truck eastbound on Court Avenue stop for a red light in the middle of the intersection with Water Street with its “back tires ... more than *4 five feet past the cross walk.” Officer Cuppy followed the truck, activated his police cruiser’s flashing lights, and initiated a traffic stop nearby. The driver, John Arthur Senn Jr., age twenty-nine, told Officer Cuppy that he did not realize he had stopped in the middle of the intersection. Officer Cuppy noted that Senn had bloodshot watery eyes, slurred speech, and a “staggered gait” and smelled of alcohol. Senn initially denied that he had been drinking that night. Officer Cuppy administered field sobriety tests, which Senn failed. Senn then admitted that he had been drinking but said he had stopped over twenty minutes earlier. Senn took a preliminary breath test, which showed an alcohol concentration of 0.165, more than double the legal limit. Senn was arrested for failing to obey the traffic control signal and for operating while intoxicated and was transported to the Des Moines metro police station for chemical testing.
Around 2:30 a.m., Officer Cuppy led Senn to the DataMaster testing room and gave Senn a copy of the implied-consent advisory. Senn read the consent. Officer Cuppy then read the advisory aloud to Senn. Officer Cuppy asked if he had any questions, and Senn replied, “No sir.” Officer Cuppy then read Senn his statutory rights under Iowa Code section 804.20. At 2:34 a.m., Officer Cuppy requested a breath specimen.
Senn asked to call a lawyer. Officer Cuppy remained in the room while Senn made phone calls. Senn had trouble contacting counsel. Officer Cuppy offered to let Senn use the phone book. Senn declined. Around 2:46 a.m., Officer Cuppy asked if Senn was trying to call a lawyer and offered the phone book again. Senn explained he had a lawyer, but she had not answered her after-hours phone number. Senn eventually reached an attorney at 2:49 a.m. Senn, in Officer Cuppy’s presence, told the attorney on the phone he was being investigated for his “second first” OWL Senn explained that his first OWI was “relinquished at the state’s expense” in 2009 or 2010. Senn answered the attorney’s questions. Senn then asked Officer Cuppy for “attorney-client privilege please.” Officer Cuppy responded that he could not have attorney-client privilege while on the phone but that he could if the attorney came to the jail. Senn repeated that comment to his attorney. Officer Cuppy explained that Senn could not be left alone with the phone. Senn then asked Officer Cuppy if he could have a family member visit. Officer Cuppy said yes, “as long as they are here in time.”
Senn asked Officer Cuppy why he was stopped. Officer Cuppy replied it was because he ran a red light. Senn told the attorney that he “did not run a red light.” Senn explained to the attorney that he worked as an electrician, so his license was “imperative” to his work. Officer Cuppy gave Senn a pen and paper to take notes while he was on the phone. Senn described his criminal record. Senn asked the attorney to come to the police station and said he was able to pay for the trip. Senn offered to pay because he “wanted to make sure he was táken care of.” Officer Cuppy then said Senn had thirty-two minutes left for private consultation. Senn said he understood the consequences of his choice to take or refuse the breathalyzer. Officer Cuppy told Senn this would be his second revocation. Senn again offered to hire the attorney. Senn asked Officer Cuppy what time he had been stopped, and Officer Cuppy replied it had been 2:04 a.m. While Senn was on the phone, he said,
I’d like to expunge any legal options I have at this point because I was downtown on a good faith gesture picking up a friend, so it’s not like I was being— *5 obviously I was legally intoxicated,. but.... I’m just saying that, yeah.
The attorney was unable to meet with Senn in person. Senn asked the attorney if he should wait for someone from the firm to come, call a family member, or do something else. Senn asked for attorney references, and she gave him some. Their conversation ended at 3:17 a.m. Senn -then tried to call the recommended attorneys and left messages.
Officer Cuppy escorted Senn to the restroom upon his request. When Senn returned, he called another lawyer and asked Officer Cuppy for a glass of water. Officer Cuppy explained he could not have any water until he decided -whether he would take the breath test. Senn left two more voice mails explaining his situation and asking for legal help. Officer Cuppy told Senn that because of his prior license revocation, this time his license would be suspended for one year if he failed the test and it would be suspended for two years if he refused to take the test.[2] Senn called a friend to let him know he would be booked soon. He expressed frustration about not being able to get an attorney to come to the station. He said he was willing to pay $5000 but no one was willing to come. He was afraid of losing his job. He said he was “playing for the good team” and hoped the officer would let him go. At 3:39 a.m., Officer Cuppy told Senn he had to make a decision. Senn consented to take the breathalyzer test. At 3:41 a.m., Senn took the test, and his blood alcohol content was 0.140.
Officer Cuppy submitted a complaint to the county attorney, and it was approved at 6:14 a.m. Eleven days later, on September 12, Senn was charged by trial information with operating while intoxicated 'in violation of Iowa Code section 321J.2, a serious misdemeanor. On November 20, Senn filed a motion to suppress,‘contesting the legality of the stop, the officer’s compliance with section 804.20, and the interference with his right to counsel under article I, section 10 of the Iowa Constitution. Senn argued the phrase “in cases involving the life, or liberty of an' individual,” which does not appear in the Sixth Amendment, showed the Iowa framers’ intent to provide a broader right to counsel. Senn argued an implied-consent procedure is a critical stage of the prosecution under • the Iowa Constitution because it involves a choice that has significant consequences for criminal liability,
The district court held a suppression hearing on December 5. At the hearing, Senn’s counsel narrowed his motion to the right to counsel under the Iowa Constitution.[3] Senn testified that when he called his attorney, she advised him to assert his attorney-client privilege: Senn did, but Officer Cuppy continued to listen to his side of the phone conversation. Senn admitted on cross-examination that the police officer told him that he could not have a confidential phone call but that the1 attorney could come in person and speak privately with Senn. at the station. He agreed that Officer Cuppy never interrupted the phone call.
On December 10, the district court denied Senn’s motion to suppress. The ruling stated,
All of the evidence that the' defendant wishes to suppress on. constitutional grounds was obtained before Senn was charged with the offense. The Iowa *6 • Constitutibnal provision is similar to the U.S. Constitution. This court finds that the phrase .“life or liberty” deals with • contempt situations such as child support, civil infractions or Chapter 229 and Chapter 229A. Therefore, Section 10 does not apply in this matter and -will not provide, a basis for excluding any of the evidence..,.
■ Further a request to 'perform field sobriety tests and the request to submit to.blood tests (includes breath testing) are not interrogation. Questions normally attendant to arrest and custody do -not constitute interrogation.
State v. Hellstem [856] N.W.2d [355] (Iowa 2014) controls in this matter. The Defendant limited his argument to only the constitutional, issue. Therefore, this court will not address the 804.20 issue.
(Citations omitted.) Following the denial of his motion, Senn waived jury trial and was convicted on the minutes of testimony. He was fined $1250 plus surcharges and court costs and incarcerated for one year with all but three days suspen4ed.
We retained Senn’s appeal.
II, Standard of Review.
The sole issue on appeal is whether Iowa Code section 804.20, by permitting the police officer or jailer to be present while a detainee suspected of drunk driving talks by phone with a lawyer about whether to submit to chemical testing, violates the right to counsel under article I, section 10 of the Iowa Constitution. We reiterate our well-established standard of review:
We review constitutional challenges to a ' statute de novo. In doing so, we must remember that statutes are cloaked with a presumption of constitutionality. The challenger bears a heavy burden, because it must prove the unconstitutionality beyond a reasonable doubt. Moreover, “the challenger must refute every reasonable basis upon which the statute could be found to be constitutional.” Furthermore, if the statute is capable of being construed in more than one manner, one of which is constitutional, we must adopt that construction.
State v. Thompson, 836 N.W.2d 470, 483 (Iowa 2013) (quoting State v. Seering, 701 N.W.2d 655, 661 (Iowa 2005)).
III. Analysis.
Senn asks us to hold for the first time that the right to counsel under article I, section 10 of the Iowa Constitution attached before the State filed criminal charges against him while he was under arrest for suspicion of drunk driving and faced with -the decision of .whether to submit to .a chemical breath test that measures his -blood alcohol level. The State contends, and the district court ruled,' that the constitutional right to counsel had not yet attached and that the arresting officer followed the governing statute by allowing Senn to speak by phone-.with a lawyer in the officer’s presence. The statute, Iowa ■Code section 804.20, states,
Any peace officer or other person having custody of any person arrested' or restrained of the person’s liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person’s family or an attorney of the person’s choice, or both. Such person shall be permitted to make a reasonable number of telephone calls as may be required to secure an attorney. If a call is made, it shall be made in the presence of the person having custody of the one arrested or restrained. If such person is intoxicated, or a person under eighteen years of age, the call may be made by the person having custody. An *7 attorney shall be permitted ter see and consult confidentially with such person alone and in private at the jail or other place of custody without unreasonable delay, A violation of this section shall constitute a simple misdemeanor.
(Emphasis added.)
Because this case arose from the invocation of implied consent, we read section 804.20 together with the implied-consent provisions of Iowa Code chapter 321J. See State v. Walker, 804 N.W.2d 284, 290 (Iowa 2011). Senn does not challenge the constitutionality of the implied-consent statute. “[W]e have continuously affirmed that the primary objective of the implied consent statute is the removal of dangerous and intoxicated drivers from Iowa’s roadways in order to safeguard the traveling public.” Id. (quoting Welch v. Iowa Dep’t of Transp., 801 N.W.2d 590, 594 (Iowa 2011)); see also Birchfield v. North Dakota, 579 U.S. -, -, 136 S.Ct. 2160, 2166, 195 L.Ed.2d 560, - (2016) (“Drunk drivers take a grisly toll on the Nation’s roads, claiming .thousands of lives, injuring many more victims, and in-, flicting billions of dollars in property damage every year. To fight this problem, all States have laws that prohibit motorists from driving with a blood alcohol concentration (BAC) that exceeds a specified level.”); State v. Garcia, 756 N.W.2d 216, 220 (Iowa 2008) (stating that Iowa’s implied-consent law “was enacted to help reduce the appalling number of highway deaths resulting in part at least from intoxicated drivers”) (quoting State v. Wallin, 195 N.W.2d 95, 96 (Iowa 1972)); State v. Comried, 693 N.W.2d 773, 775 (Iowa 2005) (“We. have said the purpose of chapter 321J is ‘to reduce the holocaust on our highways!,] part of which is due to the driver who imbibes too freely of intoxicating liquor.’ ”) (Quoting State v. Kelly, 430 N.W.2d 427, 429 (Iowa 1988).). But section 804.20 applies to all arrestees, not just drunk drivers. Walker, 804 N.W.2d at 290. Accordingly, this appeal has far-reaching implications.
Section 804.20 provides “a limited statutory right to counsel before making the important decision to take or refuse the chemical test under implied consent procedures.” Hellstern, 856 N.W.2d at 361 (quoting State v. Vietor, 261 N.W.2d 828, 831 (Iowa 1978)). Senn argues that the provision in section 804.20 allowing the officer to be present for the defendant’s phone call with a lawyer is unconstitutional because he was entitled under article I, section 10 to a private telephone consultation with his lawyer. We did not reach that constitutional argument in Hellstem. Id. at 365; In Vietor, we rejected the argument that the right to counsel under the Sixth Amendment had attached when the arrestee was asked to submit to the breathalyzer test. 261 N.W.2d at 830. In Walker, .we reiterated that the “Sixth Amendment right to counsel had not yet attached at the time [the detainee] was asked to perform the breath test.” 804 N.W.2d at 293. We have also held the right to counsel under the Iowa and Federal Constitutions does not apply to chemical testing under administrative implied-consent procedures for revoking drivers’ licenses. Swenumson v. Iowa Dep’t of Pub. Safety,. 210 N.W,2d 660, 662 (Iowa 1973).
A. Constitutional Construction and Relevant Iowa Caselaw. Article I, section 10 . is entitled “Rights of persons accused.” It contains two clauses that do not appear in the Sixth Amendment,[4] which are italicized below:
*8 In all criminal prosecutions, and in cases involving the life, or liberty of an individual the accused shall have a right to a speedy and public trial by an impartial jury; to be informed of the accusation against him, to have a copy of the same when demanded; to be confronted with the witnesses against him; to have compulsory process for his witnesses; and, to have the assistance of counsel.
Iowa Const, art. I, § 10 (emphasis added). In State v. Young, we relied on the textual differences between the state and federal provisions to hold that the right to counsel under article I, section 10 applies to misdemeanor charges with the possibility of imprisonment. 868 N.W.2d 249, 256-57, 281 (Iowa 2015). But we have never held the right to counsel under the Iowa Constitution attaches before the filing of formal criminal charges.
To the contrary, we have held the right to counsel under both the State and Federal Constitutions “attaches at or after the initiation of adversary proceedings against the defendant, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.” State v. Hensley, 534 N.W.2d 379, 382 (Iowa 1995). When deciding at what stage in a case the right to counsel attaches, “[w]e interpret the Iowa constitutional provision the same as the Sixth Amendment.” Id. at 382 n. 3; see also State v. Wing, 791 N.W.2d 243, 254 (Iowa 2010) (Cady, J., dissenting) (“Th[e] reading is the same for the right to a speedy trial under both the Sixth Amendment to the United States Constitution and article I, section 10 of the Iowa Constitution because the operative language of the two provisions is the same.”);[5] State v. Majeres, 722 N.W.2d 179, 182 (Iowa 2006) (“Iowa’s right-to-counsel guarantee affords no greater protection than the federal constitution.... ”).
We begin our constitutional analysis with familiar principles of interpretation:
First and foremost, we give the words used by the framers their natural and commonly-understood meaning. However, we may also examine the constitutional history and consider the object to be attained or the evil to be remedied as disclosed by the circumstances at the time of adoption.
Star Equip., Ltd. v. Iowa Dep’t of Transp., 843 N.W.2d 446, 457-58 (Iowa 2014) (quoting State v. Briggs, 666 N.W.2d 573, 578 (Iowa 2003)). Our goal in state constitutional interpretation “is to ascertain the intent of the framers.” Homan v. Branstad, 812 N.W.2d 623, 629 (Iowa 2012) (quoting Rants v. Vilsack, 684 N.W.2d 193, 199 (Iowa 2004)).
We begin with the plain meaning of the words of article I, section 10, which by its terms applies to “criminal prosecutions” and in “cases involving the life, or liberty *9 of an individual.” Section 10 expressly provides “the accused” with eight enumerated rights: (1) a speedy trial, (2) a public trial, (3) a trial by an impartial jury, (4) to be informed of the accusation, (5) to obtain a copy of the accusation, (6) to confront witnesses, (7) to have compulsory process for the accused’s witnesses, and (8) to have the assistance of counsel. The first seven of these enumerated rights make sense only in the context of a formal legal proceeding leading to a trial. The final enumerated right — to counsel— should be construed together with the seven preceding rights in section 10 that ensure a fair trial in criminal proceedings and cases involving the liberty of the accused. We read words not in isolation, but rather in context, consistent with our canon of construction nostátur a sotáis, which “summarizes the rule of both language and law that the meanings of particular words may be indicated or controlled by associated words.” Peak v. Adams, 799 N.W.2d 535, 547 (Iowa 2011) (quoting 11 Richard A. Lord, Williston on Contracts § 32:6, at 432 (4th ed.1999)). This canon has been “colorfully explained by Lord Macmillan as ‘words of a feather flock together.’ ” Mall Real Estate, L.L.C. v. City of Hamburg, 818 N.W.2d 190, 202 (Iowa 2012) (Cady, C.J., dissenting) (quoting Hugh Pattison Macmillan, Rt. Hon. Lord, Law and Language, Presidential Address to the Holds-worth Club (May 15, 1931)). It makes sense to construe the right to counsel as attaching when the State files charges in court. That happened eleven days after Senn submitted to the chemical breath test on the night of his arrest.
A prosecution is defined as “the commencement, including the filing of a complaint, and continuance of a criminal proceeding, and pursuit of that proceeding to final judgment on behalf of the state.” Iowa Code § 801.4(13); accord State v. Dudley, 766 N.W.2d 606, 617-18 (Iowa 2009) (holding a criminal prosecution for the purposes of the Iowa Constitution is coextensive with the statutory definition of “prosecution”); see also Prosecution, Black’s Law Dictionary (10th ed.2014) (defining “prosecution” as “[a] criminal proceeding in which an accused person is tried”). A “case” is a “civil or criminal proceeding, action, suit, or controversy at law or in equity.” Case, Black’s Law Dictionary; see also Ex parte Grace, 12 Iowa 208, 214 (1861) (holding the legislature cannot “fritter[ ] away or [break] down” a party’s rights by creating procedures in place of “a suit, an action, [or] a trial”). A criminal proceeding does not begin until a document is filed with the court.
The grammatical subject in article I, section 10 is “the accused.” An “accused” is “one charged with an offensef, especially] the defendant in a criminal case.” Accused, Webster’s Third New International Dictionary (unabr. ed.2002). The accused’s rights under this section relate to “the accusation against him.” See Iowa Const, art. I, § 10; see also State v. Burch, 199 Iowa 221, 228, 200 N.W. 442, 445 (1924) (holding section 10 “requires the defendant ‘to be informed of the accusation against him; to have a copy of the same when demanded’ [and t]he word ‘accusation’ manifestly refers to the indictment”).
By contrast, the other sections of article I provide rights more broadly to “persons” or “the people.” See, e.g., Iowa Const, art. I, §§ 1-4, 7-9, 12 (concerning “persons” and “the people”); id. art. I, § 6 (“citizens”); id. art. I, § 11 (“defendant”). We may infer from the unique word choice in section 10 — “the accused” — that the framers intended to limit the rights therein to persons accused in formal criminal proceedings. See Chiodo v. Section ⅛3.2⅛ Panel, 846 N.W.2d 845, 853 (Iowa 2014) (plurality opinion) (“If the drafters intended the two concepts[ — i.e., felonies and *10 infamous crimes — ]to be coextensive, different' words would- not have been used.”).
: If we reword section 10 to put the grammatical subject (“the accused”) first, it reads,
[The accused i]n all criminal prosecutions, and in cases involving the life, or liberty of an individual .,. shall have a right to a speedy and public trial by an impartial jury; to be informed of the accusation 'against him, to have a copy of the same when demanded; to be confronted with the witnesses against him; to have compulsory process for his witnesses; and, to have the assistance of counsel. '
Our caselaw interpreting article I, section 10 follows the foregoing construction. County of Black Hawk v. Springer; 58 Iowa 417, 418, 10 N.W. 791, 791 (1881) (“[Tjhis provision applies only to criminal prosecutions, or accusations for offences against the criminal law, where it is sought to punish the offender by fine or imprisonment.”); State v, Collins, 32 Iowa 36, 40 (1871) (holding article I, section 10 “is a clear and express declaration of the right of the defendant ‘in a criminal prosecution’ ‘to- be confronted with the witnesses against him’” (emphasis omitted));. State v. Polson, 29 Iowa 133, 135 (1870) (“It will be observed that the right secured by this provision to the accused, to be confronted with the witnesses agaifist him, is a personal right limited to proceedings in criminal prosecutions, or where the life or liberty of the citizen is involved.”).
We have frequently emphasized that article I, section 10 protects the rights of an “accused.” Atwood v. Vilsack, 725 N.W.2d 641, 650-51 (Iowa 2006) (“It protects only the rights of an ‘accused,’ not the rights of the individual facing potential, civil commitment pursuant to Iowa’s [sexually violent predator] statute.”); In re Johnson, 257 N.W.2d 47, 53 (Iowa 1977) (McCormick, J., concurring specially) (“Therefore we must decide without assistance of prior decisions whether a juvenile alleged to be delinquent is an ‘accused’ in a case involving the life or liberty of an individual within the contemplation of the framers.”); State v. Sereg, 229 Iowa 1105, 1116, 296 N.W. 231, 236 (1941) (“Section[ ] 10 .,. of Article I of the constitution of Iowa provide[s] for certain rights which are guaranteed to the accused .... ”), overruled on other grounds by Pitcher v. Lakes Amusement Co., 236 N.W.2d 333, 338 (Iowa 1975); State v. Henderson, 217 Iowa 402, 407, 251 N.W. 640, 642 (1933) (“The constitution of this state guarantees to every man accused of a crime the right to be confronted with the witnesses against him.... ” (Quoting State v. Lugar, 115 Iowa 268, 270, 88 N.W. 333, 334 (1901).)); see also State v. Duncan, 233 Iowa 1259,1264,11 N.W.2d 484, 486 (1943) (Wennerstrum, J„ dissenting) (“The question that is uppermost in the mind of the writer of this dissent is whether or not .'. the trial was afforded that degree of protection that our state constitution gives to an individual charged with a crime.” (Emphasis added.)). Accordingly, we have held that section 10 is not “applicable to [an] administrative proceeding resulting in [a] license revocation.” Gottschalk v. Sueppel, 258 Iowa 1173, 1179, 140 N.W.2d 866, 869 (1966);[6] see also .Swenumson, 210 N.W.2d at 662 (“It is well established that the state and federal constitutional right to counsel does not apply to an [administrative] implied consent proceeding.”).
Two of our earliest cases noted that the framers intended article I, section 10 to provide rights to criminal defendants who *11 are at risk of incarceration. In Collins, ¿ case decided fourteen years after the adoption of the provision, our court described this provision as providing “a clear.and express declaration of the right[s] of the defendant ‘in a criminal prosecution.’” 32 Iowa at 40. In Springer, decided .twenty-four years after the adoption of the provision, our court considered a constitutional challenge to an adjudication of insanity:
It is contended that before a person can be adjudged insane he is entitled to the safeguards provided for in this section. But it is clear to us that this provision applies only to criminal prosecutions, or accusations for offences against the criminal law, where it is sought to punish the offender by fine or imprisonment. The inquest of lunacy by a board of commissioners is in no sense a criminal proceeding. The restraint of an insane person is not designed as punishment for any act done. The insane are by the law taken into the care and custody of the state for treatment for their unfortunate infirmity. In our opinion, whatever may be thought of the power of the legislative department -of the state to provide a special tribunal for the examination of persons alleged to be fin-sane, the safeguards and limitations provided by our laws for the correction of any abuse which may arise from the acts of the commissioners are ample for the protection of the citizen.
58 Iowa at 418, 10 N.W. at 791-92. Senn was not a defendant in a criminal prosecution when he took the chemical breath test. The State was not seeking “to punish the offender by fine or imprisonment” when Officer Cuppy administered the test. See id. Instead, the police were investigating a crime. The State had not yet committed itself to prosecution based on the investigation- to that point. There was not yet a prosecution or case against Senn.
We interpreted article I, section 10 again in State v. Newsom, in which we held that a police agent who started a conversation with a defendant represented by counsel , yiolated article I,: section 10.. 414 N.W.2d 354, 359 (Iowa 1987). We tailored our holding to an accused criminal litigant:
Independent of our sixth amendment analysis, we find that, defendant’s right to counsel under the Iowa Constitution, article I, section 10, was also violated. In so doing, we rely on our own interpretation-of our state constitution. We broadly construe this provision to effectuate its purpose, which was to correct the imbalance between the position of an accused and the powerful, forces of the State, in a criminal prosecution. An accused, especially while in custody, is vulnerable to the express or implied suggestion that cooperation with those that hold the’ keys is in his or her best interest.- Legal counsel'cah equalize the positions of the' criminal litigants, but only if the client is completely free to follow counsel’s advice. An accused that is represented by counsel should not' be subjected' td a tug-of-war between defense counsel and agents of the State. We hold that .Our constitution prohibits agents of -the State from initiating any-conversations or dealings with an accused concerning the criminal charge on which representation of counsel has been sought. A violation of this prohibi-tion by the State shall preclude any waiver,, by an accused, of the right to counsel.
Id. (emphasis added). Again, this case cuts against Senn. Senn was not an accused defendant in a criminal- prosecution when he was making phone calls-from the police station.
In Young, our court determined that article I, section 10 provides a right to counsel to persons' charged with misde *12 meanor offenses with potential incarceration. 863 N.W.2d at 281. We said,
[T]he language of the “all criminal prosecutions” provision of article I, section 10 is directed toward providing counsel in order to avoid the risk of conviction, not the risk of incarceration. And if this choice of language means anything, it is difficult to avoid the conclusion that the phrase “all criminal prosecutions” was expressly designed to avoid judicially imposed slicing and dicing of criminal prosecutions into two or more categories. The bill of rights of the Iowa Constitution embraces the notion of “inalienable rights,” not rights that shrink and disappear based upon currently fashionable transient pragmatic assessments.
Id. at 278 (citations omitted). We noted,
While it may be that the “cases” language amounts to constitutional support for a right to counsel in qualifying civil contexts, it also strongly suggests that if a right to counsel exists in civil cases in which “liberty” is involved, it also must exist in criminal prosecutions in which “liberty” is also at stake.
Id. at 279 (emphasis added). When we discussed the “cases” clause, we focused on prosecutions, not investigations that precede formal charges. The State had not filed criminal charges against Senn at the time he was deciding whether to submit to the chemical breath test. Therefore, he was not entitled to counsel under article I, section 10.
We have only found one case applying article I, section 10 in the absence of a formal criminal prosecution. In Grace, the court found that a debtor was unconstitutionally held in contempt after a judge acting pursuant to a statute put the debtor in jail for refusing to give the money in his pocket to satisfy a judgment. 12 Iowa at 212. We found the statute was unconstitutional, holding,
If [the statute’s effects] can be permitted, then we do not see how far the legislature might not go, in providing for the trial of issues without a jury, their determination, and for the imprisonment of the party who failed to comply with the finding.
Id. at 216. Senn’s argument is not supported by Grace because the debtor in that case was the civil defendant in the underlying execution on a judgment. A district court had issued the execution order on the creditor’s request. In contrast, Senn was not involved with the court system when he was asked to submit to a chemical breath test. Therefore, his article I, section 10 rights had not attached.
Our caselaw indicates Senn did not have a right to counsel at the time of his chemical breath test. However, to answer Senn’s contention that the right should have attached at that time, we now go on to consider whether there is any historical support for his claim in the drafting of the constitutional provision. We will then consider whether the constitutions and case-law of other jurisdictions provide any support for his interpretation of our state constitution.
B. The Drafting History of Article I, Section 10. We next review the drafting history of article I, section 10 to put its origins in proper historical context and thereby evaluate Senn’s claim that it was intended to provide a broader right to counsel than the Sixth Amendment. As both parties acknowledge, article I, section 10 was hotly debated at Iowa’s constitutional convention. For the sake of thoroughness, we include a history of all the proposed amendments to the section to provide context for the introduction of the additional language that was introduced into our constitution. Our review of this *13 history provides no support for the view that the framers intended the right to counsel to attach before a case is filed in court.
The rights guaranteed by Iowa’s first ratified constitution stated,
In all criminal prosecutions, the accused shall have a right to a speedy trial by an impartial jury; to be informed of the accusation against him; to be confronted with the witnesses against him; to have compulsory process for his own witnesses, and to have the assistance of counsel.
Iowa Const, art. II, § 10 (1846). The first proposed amendment to this provision in 1856 altered an accused’s trial rights as follows:
In all criminal prosecutions, the accused shall have a right to a speedy trial, before an impartial jury, of the county or district in tvhich the offense is alleged to have been committed, to demand the nature and cause of the accusation against him, to be confronted by the witnesses against him, to have compulsory process for his own witnesses, and to have the assistance of counsel.
1 The Debates of the Constitutional Convention of the State of Iowa 102 (W. Blair Lord rep. 1857) [hereinafter The Debates ], www.statelibraryofiowa.org/services/ collections/law-library/iaconst (emphasis added). The proposed section gave “an accused party the right to be tried ... where he is likely to have a more fair and impartial trial, than if taken to a distant part of the state.” Id.
Mr. Harris then moved to amend the provision as follows:
In all criminal prosecutions, the accused shall have a right to a speedy trial before an impartial jury, of the County or District in which the offense is alleged to have been committed; to demand the nature and cause of the accusation against him, and a copy thereof, to be confronted by the witnesses against him, to have compulsory process for his own witnesses, and to have the assistance of counsel: Provided this section shall not be construed to prevent the General Assembly from passing laws ordering a change of venue from one .district to another.
Id..at 119 (emphasis added). Harris explained that this amendment was intended to ensure that. an accused could change venue when it was necessary, and he “would not have a man depend upon the courtesy of the court for a copy- of the indictment, but. give him the power to demand it as a matter of right.” Id. at 119— 20. This proposal generated vigorous debate. See id. .at 119-23. Mr. Clark, a vocal proponent of the Committee’s original amendment, argued the purpose of the amendment was “to place a safeguard around the rights of persons accused of crime.” Id. at 122.- Clark was concerned, that under the old constitution “the legislature might pass a law ... under which a man might be dragged against his will to some other county than that in which the offence is alleged to have been committed” for trial. Id. at 122. My. Clarke[7] stated the purpose of .the amendments to section 10 were “for the. benefit and to protect those charged with crime.” Id. at 123. However, the Committee on Preamble and Bill of Rights did not agree with Harris’s additional amendment because “those who are charged with crime” were already afforded that right .under other, provisions, of the constitution. Id. at 124.
*14 Clark submitted an additional amendment to section 10, which states in relevant part:
In all criminal prosecutions, and in all ' cases■ involving the life or liberty of an individual, the accused shall have a right to a speedy and public trial before an impartial jury, of the County or District in which the offense is alleged to have been committed; to demand the nature and cause of the accusation against him, and have a copy of the same when demanded; to be confronted by the witnesses against him, to have compulsory process for his own witnesses, and to have the • assistance of counsel.
Id. at 201. Harris moved to strike the language “and in all cases involving the life or liberty of an individual.” 2 The Debates, at 736. Harris said that phrase would come into play in “two classes of cases ,,, in which .,. a person would not be entitled to a jury trial in this state.” Id. First, he was concerned that a “fugitive from justice” who had committed a crime in another state and fled' into Iowa to be arrested would be entitled to a trial here. Id. Harris believed that interpretation would “come into conflict with the constitution of the United States.” Id. Harris also believed the phrase would have ramifications for fugitive slaves in the state:
I understand that this provision is inserted for the purpose of providing that instead of the fugitive slave having the trial by jury where his labor may be due, he shall have the trial here; ’ which would be equivalent to saying at once, that any slave in the territory of this state shall have the right to assert his ' freedom, and cannot be remanded back into slavery.
Id. Clark first responded to Harris’s concerns by stating that he believed the added language was duplicative of the United States Constitution’s guarantee of due process of law. Id. at 737. Clark also denied that the section would allow another state’s fugitive from justice to be tried in Iowa:
The provision says that he shall not be deprived of liberty; that is, upon the final trial. It is upon the trial which is to settle for all coming time the question as to his right to liberty in that case. It is the final trial, the trial provided by law, according to the common laws, when the case, is heard, the jury is [empaneled], and the verdict is pronounced. It has no reference to his being arrested in preparation for trial, Are not persons arrested every day for the purpose of examination, to ascertain whether there is proper cause for retaining them until they shall be put on final trial?
Id. (emphasis added). But he confirmed that the language was,intended to protect fugitive slaves from being tried out of state, which he viewed as an affront to Iowa’s inherent sovereignty:
I hold, that unless we have the right to make a constitution which will secure me the right of jury trial, if I am claimed as a fugitive slave, without that right we are not a sovereign people. Without that right we cannot protect every individual member of society. Without that right we cease to be a sovereignty, and become dependent upon some other power.... And if I am [claimed as a fugitive slave and] found within the jurisdiction of this State, it is a principle of sovereignty, that if I am arraigned upon a charge that I do not own myself, that I am not a free man, I have the right to a trial here where I am found; and the ' laws of the State should guarantee to me that right ,.. I do not care whether the case is probable or not.
Id. Clark acknowledged that the language may conflict with the Federal Fugitive *15 Slave Act of 1850 but argued that even if it did, the courts would refuse to give the provision effect “because the higher law, the law of the United States, will override the provisions of our constitution.” Id. at 738.
Mr. Wilson also spoke in support of the amendment by arguing that the country’s founding fathers would support this philosophy and Harris’s fears were unfounded. Id. at 739. Wilson said, “I well know that there -was a. time in the history of this country when men were not afraid to say, that in all cases involving life or liberty, man should be entitled to trial by jury.” Id. He argued that the “sooner we assert our determination to stand by the principles of the Fathers, the better for our country, the better for ourselves, the better for posterity.” Id. Wilson argued that territorial jurisdiction prevented a fugitive from justice from being tried by an Iowa court because the underlying “crime- cannot be punished excepting by the courts of the State having jurisdiction of the of-fence.” Id. He said a different jurisdictional rule controlled a fugitive slave captured in Iowa: ■
[Y]ou do not charge upon a man the commission of any crime, and the charge is brought primarily against the man in the State where he is sought to be reclaimed,. If you bring a charge against a man for having escaped from service or labor due in another State, your charge is primary- in its character,.. and; is brought where you find the man. What is the presumption- of law in that case?
The presumption is that every man is a ■ freeman until he is shown to be a slave. Where are you to determine that? Under the jurisdiction where the charge is brought, and not, as in "the [fugitive-from-justice] case, under the jurisdiction where the crime was committed.
Id. Following this discussion, Harris’s proposed deletion of “and in all cases involving the life or liberty of an individual” was rejected by a vote of 21 to 14. Id. at 741.
There can be no “doubt from the con-, vention record that the- disputed language was added to Art. I[, section] 10 in an effort to nullify the Fugitive Slave Act by giving persons accused as escaped slaves the right td jury trial in Iowa.” Johnson, 257 N.W.2d at 54 (McCormick, J., concurring ' specially). Slave' owners were required to go through a formal proceeding to pursue a fleeing slave under the Fugitive Slave Act- of 1850. See Act of Sept. 18, 1850, ch. 60, § 4, 9 Stat. 462 (repealed 1864) (requiring “satisfactory proof’ to pursue a fugitive slave).[8] To the extent that the framers intended to extend the rights provided under this section, the additional breadth provided by the “cases” clause refers to a: right to a jury trial in a pending court case. See Grace, 12 Iowa.at 213 (‘We can not believe .that [the change in section 10 of the Bill of Rights] was intended to give the right of trial by jury to the occasional fugitive slave found in our State, and to withhold it in cases of equal magnitude and vital importance, from , the half million of free white inhabitants of the State.’.’). The framers consistently and ex *16 clusively focused on the rights of persons who had already entered the court system. The historical record for article I, section 10 shows that the framers intended the right to counsel to apply only after pleadings have been filed in court to commence a case or criminal proceeding.
C. Other Jurisdictions. We next examine decisions applying the right to counsel under similar constitutional provisions of other jurisdictions. First, we review federal precedent applying the Sixth Amendment right to counsel. Second, we consider how other state courts have applied the Sixth Amendment in implied-consent proceedings. Third, we survey the jurisdictions that have analyzed the right to counsel under state constitutional provisions. We conclude that no jurisdiction has provided a full constitutional right to counsel for implied-consent proceedings. We decline to follow the distinct minority of courts that recognize a limited state constitutional right to counsel for chemical breath tests before a formal criminal charge has been filed.
1. United States Supreme Court precedent regarding the right to counsel Federal jurisprudence developed to address the unrepresented accused’s inability to effectively present a defense in the court system:
Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to. establish his innocence.
Powell v. Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158, 170 (1932) (emphasis added).
The Supreme Court provided safeguards to ensure the right to counsel is more than an empty right. Under the Sixth Amendment right to counsel, a person is entitled to effective assistance. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). The right to counsel includes the right to have counsel appointed at government expense if the defendant is indigent. Gideon v. Wainwright, 372 U.S. 335, 344, 83 S.Ct. 792, 796-97, 9 L.Ed.2d 799, 805 (1963). A defendant who is not indigent is entitled to “choose who will represent him.” United States v. Gonzalez-Lopez, 548 U.S. 140, 144, 126 S.Ct. 2557, 2561, 165 L.Ed.2d 409, 416 (2006). Moreover, the right to counsel may not be abandoned without a knowing and intelligent waiver of that right. Johnson v. Zerbst, 304 U.S. 458, 463-64, 58 S.Ct. 1019, 1022-23, 82 L.Ed. 1461,1466 (1938).
The Supreme Court employs a two-part test to determine whether the accused has a right to counsel. First, the right must have attached, which means that “formal judicial proceedings have begun.” Rothgery v. Gillespie County, 554 U.S. 191, 211, 128 S.Ct. 2578, 2591, 171 L.Ed.2d 366, 382 (2008). Second, it must be a “critical stage” of the prosecution. See id. (“If, indeed, the County had simply taken the cases at face value, it would have avoided the mistake of merging the attachment question (whether formal judicial proceedings have begun) with the distinct ‘critical stage’ question (whether *17 counsel must be present at a postattachment proceeding unless the right to assistance is validly waived).”).
In United States v. Wade, a defendant argued he had a right to counsel during a postindictment lineup at a courtroom. 388 U.S. 218, 220, 87 S.Ct. 1926, 1928-29, 18 L.Ed.2d 1149, 1153 (1967). During the lineup, each person wore strips of tape like the ones worn by the robber and were forced to say something like “put the money in the bag.” Id. The Court explained that the Sixth Amendment right to counsel is not limited to the trial:
[I]n addition to counsel’s presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel’s absence might derogate from the accused’s right to a fair trial. The security of that right is as much the aim of the right to counsel as it is of the other guarantees of the Sixth Amendment— the right of the accused to a speedy and public trial by an impartial jury, his right to be informed of the nature and cause of the accusation, and his right to be confronted with the witnesses against him and to have compulsory process for obtaining witnesses in his favor. The presence of counsel at such critical confrontations, as at the trial itself, operates to assure that the accused’s interests will be protected consistently with our adversary theory of criminal prosecution.
Id. at 226-27, 87 S.Ct. at 1932, 18 L.Ed.2d at 1157 (footnotes omitted) (emphasis added). The Court focused on “whether potential substantial prejudice to defendant’s rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice.” Id. at 227, 87 S.Ct. at 1932,18 L.Ed.2d at 1157.
The Wade Court found a right to counsel because there was “grave potential for prejudice, intentional or not, in the pretrial lineup, which may not be capable of reconstruction at trial, and [because] presence of counsel itself can often avert prejudice and assure a meaningful confrontation at trial.” Id. at 236, 87 S.Ct. at 1937, 18 L.Ed.2d at 1162. “Thus both Wade and his counsel should have been notified of the impending lineup, and counsel’s presence should have been a requisite to conduct of the lineup, absent an ‘intelligent waiver.’ ” Id. at 237, 87 S.Ct. at 1937, 18 L.Ed.2d at 1163.
But the Court agreed with the government that gathering scientific evidence does not implicate the right to counsel:
[A] mere preparatory step in the gathering of the prosecution’s evidence [is] not different — for Sixth Amendment purposes — from various other preparatory steps, such as systematized or scientific analyzing of the accused’s fingerprints, blood sample, clothing, hair, and the like. We think there are differences which preclude such stages being characterized as critical stages at which the accused has the right to the presence of his counself Knowledge of the techniques of science and technology is sufficiently available, and the variables in techniques few enough, that the accused has the opportunity for a meaningful confrontation of the Government’s case at trial through the ordinary processes of cross-examination of the Government’s expert witnesses and the presentation of the evidence of his own experts. The denial of a right to have his counsel present at such analyses does not therefore violate the Sixth Amendment; they are not critical stages since there is minimal risk that his counsel’s absence at such stages might derogate from his right to a fair trial.
*18 Id. at 227-28, 87- S.Ct. at 1932-83, 18 L.Ed.2d at 1157-58. In our view, the Da-taMaster breathalyzer test is an example of scientific evidence gathering.
In Kirby v. Illinois, the Court refused to extend the right to counsel to routine police investigations preceding indictment. 406 U.S. 682, 689-90, 92 S.Ct. 1877, 1882-83, 32 L.Ed.2d 411, 417-18 (1972) (plurality opinion). Thomas Kirby and Ralph Bean were arrested ' for carrying traveler’s checks and a Social Security card bearing the name of Willie Shard. Id. at 684, 92 S.Ct at 1879-80, 32 L.Ed.2d at 414-15. The two men claimed they had “won them in a crap game.” Id. at 684, 92 S.Ct. at 1880, 32 L.Ed.2d at 415, Police officers arrested them- and brought them to the police station. Id. When they reached the police station, the officers learned that Willie Shard had reported a robbery the day before. Id. at 684, 92 S.Ct. at 1879-80, 32 L.Ed.2d at 415. Police brought Shard to the station to observe Bean and Kirby. Id. at 684, 92 S.Ct, at 1880, 32 L,Ed.2d at 415. Shard identified them as 'the robbers. Id. at 684-85, 92 S.Ct. at 1880, 32 L.Ed.2d at 415. Kirby and Bean were indicted six weeks later. Id. at 685, 92 S.Ct. at 1880, 32 L.Ed.2d at 415. After they were convicted, they appealed on the ground that they had a right to counsel at the meeting with Shard at the police station. Id. at 686-87, 92 S.Ct. at 1881, 32 L.Ed.2d at 416.
The Court affirmed their convictions. Id. at 691, 92 S.Ct. at 1883, 32 L.Ed.2d at 419. The Court refused to extend Wade and focused on whether the right to counsel had attached:
; The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting- point ■ of our whole system -of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government -and defendant have solidified; It is then that a defendant finds himself faced with the ' prosecutorial forces of organized society, and immersed in the intricacies of . substantíve and procedural criminal law. It is this point, therefore, that marks the commencement of the “criminal prosecutions” to which alone the explicit guarantees of the Sixth Amendment are applicable.
In this case we are asked to import into a routine police investigation an absolute constitutional guarantee histori- • cally and rationally applicable only after the onset of formal prosecutorial proceedings. We decline to do so. Less than a year after Wade and Gilbert were decided, the Court explained the rule of those decisions- as follows: “The rationale of those cases was that an accused is entitled to counsel at any ‘critical stage of the prosecution,’ and that a post-indictment lineup is such a ‘critical stage.’ ” We decline to depart from that rationale today by imposing a per se exclusionary rulé upon testimony concerning an identification that took place long before the commencement of any prosecution whatever.
Id. at 689-90, 92 S.Ct. at 1882-83, 32 L.Ed.2d at 417-18 (emphasis added) (footnote omitted) (citations omitted) (quoting Simmons v. United States, 390 U.S. 377, 382-83, 88 S.Ct; 967, 970, 19 L.Ed.2d 1247, 1252 (1968));
In United States v. Ash, the Court considered whether a postindictment photographic lineup shown to four witnesses was a critical stage in the prosecution. 413 U.S. 300, 300-01, 93 S.Ct. 2568, 2569, 37 L.Ed,2d 619, 621 (1973). The Court explained' that the critical-stage analysis ‘■‘call[s] for examination of the event in order to determine whether the accused *19 required aid in coping with legal problems or assistance in meeting his adversary.” Id, at 313, 93 S.Ct. at 2575, 37 L,Ed.2d at 628. Ash was not present during the photographic display and had no right to be present, so “no possibility ar[ose] that the accused might [have been] misled by his lack of familiarity with the law or overpowered by. his professional adversary.” Id. at 317, 93 S.Ct. at 2577, 37 L.Ed.2d at 631. The Court held there was no “right to counsel at photographic displays conducted by the Government for the purpose of allowing a witness to attempt an identification of the offender.” Id. at 321, 93 S.Ct. at 2579, 37 L.Ed.2d at 633.
In United States v. Gouveia, the Supreme Court held a prison inmate does not have a right to a court-appointed attorney while in an administrative detention before an ■ official indictment is filed. 467 U.S. 180, 192-93, 104 S.Ct. 2292, 2300, 81 L.Ed,2d 146, 157 (1984). Prison officials suspected. Adolpho Reynoso and William Gouveia had murdered a fellow inmate. Id. at 182-83, 104 S.Ct. at 2294, 81 L.Ed.2d at 150. Reynoso and Gouveia were placed in an administrative detention unit for approximately nineteen months without appointed counsel. Id. at 182-83, 104 S.Ct. at 2294-95, 81 L.Ed.2d at 150-51. During their time in administrative detention “prison officials held disciplinary hearings” and determined that the respondents had participated in the murder. Id. While in administrative detention, “their participation in various prison programs was curtailed, [but] they were still allowed regular visitation rights, exercise periods, access to legal materials," and unmonitored phone calls.” Id. at 183,104 S.Ct. at 2295, 81 L.Ed.2d at 151. A similar procedure was used before Robert Mills and Richard Pierce were indicted for a separate inmate murder. Id. at 184, 104 S.Ct, at 2295, 81 L.Ed.2d at 151.
The Court held there was no right to a court-appointed attorney because the government had not initiated adversarial judicial proceedings. Id. at 192, 104 S.Ct. at 2300, 81 L.Ed.2d at 157. The Court said, “[0]ur cases have long recognized that'the right to counsel attaches only at or after the initiation of adversary judicial proceedings against the defendant.” Id. at 187, 104 S.Ct. at 2297, 81 L.Ed.2d at 153. The Court explained- that the attachment timing was justified by the plain language of the Sixth Amendment- and fulfilled the purpose for the amendment, and it distinguished the cases in which attachment occurred prior to trial:
[G]iven the ■ plain language of the Amendment and its purpose of protecting the unaided layman at critical confrontations with his adversary, our conclusion that the right to counsel attaches . at the initiation of adversary judicial criminal proceedings “is far from a mere formalism.” It is only at that time “that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and. immersed in the intricacies of substantive and procedural criminal law.”
Id. at 188-89, 104 S.Ct. at 2297-98, 81 L,Ed.2d at 154-55 (citation omitted) (quoting Kirby, 406 U.S... at 689, 92 S.Ct, at 1882, 32 L.Ed.2d at 418).
In Rothgery, the Court gave further guidance on when a prosecution commences. 554 U.S. at 213; 128 S.Ct. at .2592, 171 L.Ed.2d at 383. "Walter. Ro-thgery was arrested based on an erroneous record that-he had been convicted of a felony. Id. at 195, 128 S.Ct. at 2581, 171 L.Ed.2d at 372. Rothgery was. brought before a magistrate because the officers did not have an arrest warrant. Id. at 195, *20 128 S.Ct. at 2581,171 L.Ed.2d at 373. The arresting officer submitted an affidavit that claimed that Rothgery was charged with a felony. Id. at 196, 128 S.Ct. at 2582, 171 L.Ed.2d at 373. The magistrate determined there was probable cause for the arrest and set a $5000 bond. Id. Ro-thgery posted the bond, which stated that “Rothgery stands charged by complaint.” Id. Rothgery did not have money for a lawyer, and his requests for one were denied. Id. Six months later, a lawyer was appointed for Rothgery, who assembled the relevant paperwork and relayed the information to the district attorney, who dismissed the indictment. Id. at 196-97, 128 S.Ct. at 2581, 171 L.Ed.2d at 373.
The Court reiterated the right to counsel “does not attach until a prosecution is commenced.” Id. at 198,128 S.Ct. at 2582, 171 L.Ed.2d at 374 (quoting McNeil v. Wisconsin, 501 U.S. 171, 175, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158, 166 (1991)). A prosecution commences at “the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.” Id. (quoting Gouveia, 467 U.S. at 188, 104 S.Ct. at 2297, 81 L.Ed.2d at 154). The Court held the prosecution had commenced against Rothgery when he was brought before the judicial magistrate because
an accusation filed with a judicial officer is sufficiently formal, and the government’s commitment to prosecute it sufficiently concrete, when the accusation prompts arraignment and restrictions on the accused’s liberty to facilitate the prosecution. From that point on, the defendant is “faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law” that define his capacity and control his actual ability to defend himself against a formal accusation that he is a criminal. By that point, it is too late to wonder whether he is “accused” within the meaning of the Sixth Amendment, and it makes no practical sense to deny it.
Id. at 207, 128 S.Ct. at 2589, 171 L.Ed.2d at 380 (citations omitted) (quoting Kirby, 406 U.S. at 689, 92 S.Ct. at 1882, 32 L.Ed.2d at 418). It is irrelevant whether a public prosecutor is aware or involved in the initiated proceedings. Id. at 194-95, 128 S.Ct. at 2581, 171 L.Ed.2d at 372. In sum, the Court concluded
a criminal defendant’s initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction,.marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel.
Id. at 213, 128 S.Ct. at 2592, 171 L.Ed.2d at 383.
The Supreme Court has never held that the Sixth Amendment provides a right to counsel before submitting to chemical testing.[9] The Court was presented with the *21 question in 1985 but dismissed the appeal for want of a federal question over two dissenting justices. Nyflot v. Minnesota Comm’r of Pub. Safety, 474 U.S. 1027, 1027, 106 S.Ct. 586, 586, 88 L.Ed.2d 567, 567 (1985) (mem.).,. In Roberts v. State, the United States Court of Appeals for the First Circuit concluded that a driver did not have the right to counsel during an implied-consent proceeding
because the police were still waiting for the outcome of their investigation — either from the results of the blood/alcohol test or from the fact of defendant’s refusal to submit to the test — before deciding whether or not to bring charges against the defendant. The government had not yet crossed the constitutional divide between investigator and accuser. As a threshold matter, the right to counsel had not yet attached when [the defendant’s] request for counsel was denied ....
48 F.3d 1287, 1291 (1st Cir.1995). Senn cites no federal authorities to the contrary.
2. State cases applying the federal constitutional right to counsel. We next turn to state cases applying the federal right to counsel. We begin with our own state. In Walker, we held the “Sixth Amendment right to counsel had not yet attached at the time [the detainee] was asked to . perform the breath test.” 804 N.W.2d at 293. We held in Vietor there was no violation of the arrestee’s Sixth Amendment right to counsel when evidence of his uncounseled test refusal was admitted at trial. 261 N.W.2d at 830. In other cases, we explained why the right does not attach before formal criminal charges are filed.
In State v. Johnson, the police filed a complaint against Kevin Johnson for abandonment of a dependent person after his wife reported their, child missing. 318 N.W.2d.417, 420, 427 (Iowa 1982). At 3:55 p.m., police officers arrested Johnson, Mir-andized him, and asked him questions about the child. Id. at 427. Johnson’s attorney called and interrupted the interview to speak with him. Id. at 428. At 4:30 p.m., Johnson’s attorney came to the jail and spoke with the police and the defendant. Id. A few hours later, his wife told the police that the child was dead and buried in a wooded area. Id. When the police were unable to find, the child’s body, they ■ interrogated Johnson, who made statements about the burial. Id. Johnson appealed, alleging in part that he was denied his Sixth Amendment right to counsel during the second interview. Id.
We concluded that Johnson was denied his right to counsel in the second interview:
An accusatory instrument in the form of a complaint had been filed requesting that a warrant issue for defendant’s arrest and that defendant be dealt with according to law. The county attorney’s involvement in filing the complaint and procuring the warrant focused the pros-ecutorial forces on defendant. Given the significant level of prosecutorial involvement at this stage of the case, defendant’s arrest can hardly be characterized as purely • investigatory in nature. The forces of the State had solidified in a position adverse to defendant, at least with respect .to the abandonment charge growing out of the incident.
Id. at 434-35 (citations omitted).
Unlike the prosecutorial forces at play in ■Johnson, the implied-consent procedure was investigatory here. The State was not yet committed to prosecuting Senn. The *22 county attorney was not involved, and no changing papers were filed with the court for- another eleven days.
The Kansas Supreme Court refused to find a right to counsel during chemical testing because it was not a critical stage in the prosecution. State v. Bristor, 286 Kan. 313, 691 P.2d‘ 1, 5 (1984). The Bri-stor court recognized that a driver faces serious consequences from a chemical. breath test and that “the advice of counsel can be useful because a driver may be dazed as a result of the alcohol, an accident, or both.” Id. But the court concluded that “[h]ot every evidence-gathering procedure is a critical stage.” Id.
The Maine Supreme Court reached a similar conclusion based on the autonomous nature of choosing whether or not to take a test:
There is little counsel could do in making a test decision (or, even, during the , administration of the test) for the defendant., The test is, in fact, a “mere preparatory step”; the officers, short of using improper test administration procedures or tampering, with the specimen, can do nothing to impair the defendant’s subsequent fair trial. , If the officers do engage in such improper conduct, the defendant can effectively confront that aspect of the Government’s case at trial.
State v. Jones, 457 A.2d 1116, 1118 n. 5 (Me.1983).
The New Mexico Court of Appeals held no right to counsel had attached when the driver submitted to a breath test:
We are not unmindful of the issues defendants raise regarding the practical effect of failing a [breath alcohol test], being issued a citation and having the narrative portion of a charging instrument filled out by the arresting police officer. While it may be true that this combination of occurrences leads to State prosecution in a high percentage of cases, it does not of itself amount to the kind of prosecutorial commitment which the United States Supreme Court has recognized as implicating the sixth amendment.
State v. Sandoval, 101 N.M. 399, 683 P.2d 516, 519 (N.M.Ct.App.1984).
Senn has cited no decisions extending the Sixth Amendment right to counsel to a driver’s decision to submit to a chemical breath test before formal criminal charges are filed. The authorities are unanimous that such a right has not yet attached under, the Sixth Amendment.
3. Jurisdictions with no state constitutional right to counsel during implied-consent proceedings. The vast majority of courts deciding the issue conclude there is no state constitutional right to counsel at the time the motorist must decide whether to submit to chemical 'testing.[10] Most *23 states follow the federal right-to-counsel attachment standard under their state constitutional provision.[11] The Pennsylvania *24 Supreme Court surveyed precedent nationwide[12] when it expressly declined to find a broader right to counsel under the Pennsylvania Constitution:[13]
From our analysis of the opinions issued by our sister states, we conclude that the majority position of adhering to the federal rule on the attachment of the right to counsel is the most sensible. The plain language of Article I, § 9 limits the right to those situations where an “accused” is the subject of a “criminal prosecution”. The terms “accused” and “all criminal prosecutions” are not mere verbiage with which we may summarily dispense. Rather, they are necessary terms which define the scope of this right. Were we to hold the attachment of the right to counsel is independent of the creation of an “accused” and the initiation of a “criminal prosecution,” and is instead triggered by some earlier interaction between the police and the defendant, we would divorce this right from its constitutional basis. Such a holding would create a rootless, ethereal “constitutional” right which would have no foundation in the constitution of this commonwealth.
Commonwealth v. Arroyo, 555 Pa. 125, 723 A.2d 162, 169 (1999) (emphasis added). We agree.
Our sister courts give several reasons why the right to counsel does not attach during an implied-consent proceeding. The Wyoming Supreme Court characterized its three main reasons why an implied-consent proceeding is not a critical stage of a criminal prosecution:
First, the function of the Sixth Amendment right to counsel is to preserve the defendant’s right to a fair trial, once adversarial criminal proceedings have been commenced by the filing of a formal charge. Second, the chemical testing decision is “‘not essentially “a lawyer’s decision” but, on the contrary, can be made by a defendant in the absence of the assistance of counsel without any substantial prejudice to [the 'accused’s] rights under the sixth amendment.’ ” And third, the “right” to refuse the test is not a right at all, but is, at most, a statutory privilege or an “option” which may be strictly regulated by the state.
Mogard v. City of Laramie, 32 P.3d 313, 324 (Wyo.2001) (alteration in original) (footnote omitted) (citations omitted) *25 (quoting State v. Delisle, 137 N.H. 549, 630 A.2d 767, 768 (1993)); see also Commonwealth v. Brazelton, 404 Mass. 783, 537 N.E.2d 142, 143 (1989) (“The moment at which a person must decide to take or to refuse to take a breathalyzer test is not a critical stage in the criminal process.”); State v. Greene, 128 N.H. 317, 512 A.2d 429, 432 (1986) (holding the right to take a breath test is not a critical stage because advice is not necessary “to protect a defendant’s right to a fair trial”); State v. Howren, 312 N.C. 454, 323 S.E.2d 335, 336-37 (1984) (holding an implied-consent proceeding is not a critical stage of the prosecution); Commonwealth v. McCoy, 601 Pa. 540, 975 A.2d 586, 590 (2009) (holding no right to. counsel under the state constitution because the implied-consent proceeding “was not a ‘critical stage’ under [Pennsylvania] jurisprudence”); McCambridge v. State, 778 S.W.2d 70, 72 (Tex.Crim.App.1989) (en banc) (holding the chemical breath test procedure “is not a ‘critical stage’ of the criminal process which necessitates either the prior consultation [with] or presence of counsel under the right-to-counsel provision of Article I, § 10 of the Texas Constitution”, (quoting Forte v. State, 759 S.W.2d 128, 139 (Tex.Crim.App.1988) (en banc))). ■
The Massachusetts Supreme Court focused on the inherent practical problems in concluding there is no right to counsel before submitting to a breathalyzer test:
The recognition of a right to consult an attorney before deciding to take a breathalyzer test presents formidable practical problems. In the present ease, the defendant wanted to call his private attorney. If an attorney is not available, a delay may ensue and the test results may then be stale and inaccurate. The same result follows for one who has no attorney or has no money to retain an attorney.
Brazelton, 537 N.E.2d at 143. The practical problem confronted in Brazelton is reflected in the record before us. Senn made numerous phone calls and had trouble getting an attorney on the phone, and he was unable to get an attorney to meet with him at the police station. If we hold the right' to counsel 'attaches during an implied:consent proceeding, we will also need to determine whether that right, like the federal constitutional right to counsel, includes the right to an attorney at state expense if the motorist is indigent.
The Georgia Supreme Court rejected a defendant’s right to counsel before deciding whether to take a -chemical breath test because it would be unlikely that an attorney would be able to meaningfully assist the driver before the test:
After all, the officer who administers the test must advise the driver of his implied consent .rights pursuant to [the Georgia implied consent statute]. Thus, when it comes to consulting with a driver, there is very little that a lawyer could add that would substantially affect the fairness of the trial.
Rackoff v. State, 281 Ga. 306, 637 S.E.2d 706, 708-09 (2006).
The Texas Supreme Court previously recognized a broader right to counsel under its state constitution but returned to the federal standard.[14] See McCambridge, 778 S.W.2d at 75-76. The McCambridge court explained it believed the “initiation of adversary criminal proceeding” language in Kirby was a departure from the analysis in Wade. Id. at 75. The court determined a case-by-case rule was unworkable:
*26 Since making that determination, however, we have concluded that the classification of a period in the criminal process as “critical” on a case by case basis is ambiguous, vague, and thus un- . workable. Consistency is the objective of any legal standard. If consistency can be achieved it benefits both law enforcement, and the public. Consequently, although we do not depart from our conclusion that the reasoning in Kirby cannot be logically reconciled with the converse reasoning in Wade and Gilbert, we are nonetheless persuaded that by adopting a bright line rule establishing when the critical stage in the criminal process occurs the public will ultimately benefit.
Id, at 75-76.
These authorities are persuasive. We too want to avoid creating an unworkable rule for determining when the right to counsel attaches, If we expand the right to counsel to include implied-consent chemical breath tests before any criminal case is filed, what is the limiting principle? Why stop there? Why not expand the right further to include noncustodial questioning by police or police requests for consent searches before any charges are filed? The text of our constitution provides a clear starting point for the attachment of the right to counsel — the court filing that commences the criminal proceeding or other case putting liberty at risk. We are unwilling to erase that bright line.
Only four jurisdictions — Florida, Oregon, Minnesota, and New York — have recognized a broader right to counsel under' their state constitutions.[15] <> Even so, Florida does not recognize a right to counsel before submitting to a chemical breath test. A Florida appellate court rejected a defendant’s argument that - he had the right to counsel before submitting to a breathalyzer test in State v. Burns, 661 So.2d 842, 847 (Fla.Dist.Ct.App.1995). The court recognized that the right to counsel under the Florida Constitution attaches “at the earliest of the following points: when he or she is formally charged with a crime via the filing of an indictment or information, or as soon as feasible after custodial restraint, or at first appearance.’’ [16] Id. (quoting Traylor v. State, 596 So.2d 957, 970 (Fla.1992)). This definition of the beginning of a prosecution is broader than the federal right because it encompasses “custodial restraint,” which includes persons who are booked but not charged.[17]
*27 See Traylor, 596 So.2d at 970 & n. 38. The state, as in this case, argued that it is not feasible to supply counsel in impaired-driving cases. Bums, 661 So.2d at 847. ' The court agreed the state’s constitutional standard posed a serious practical problem:
Whether the right to counsel was provided “as soon as feasible” is a nebulous gray area, the determination of which is completely dependent on how much importance is given the State’s' dilemma. Even stationing a public defender at the testing center would not solve the problem because there has been no judicial determination of a defendant’s right to a public defender at this stage of the proceedings. Certainly if “feasible” means possible, then the right to counsel attached immediately at the center.
Id. But the court resolved the appeal by determining the testing was not at a critical stage in the prosecution because the test results could be challenged at trial. Id. at 848. The court emphasized that breathalyzer tests are essentially an evidence-gathering process, and the defendant is equally capable of representing himself as any defense counsel. Id. If the case goes to trial, defense counsel still has the opportunity, to “attack the field tests and the breathalyzer tests through discovery, cross examination, and defense experts.” Id.
These Florida cases illustrate that for Senn to prevail, we must find both that the right to counsel under the Iowa Constitution attaches before the beginning of a formal prosecution and that a primarily evidence-gathering activity can be a critical stage to the prosecution. We conclude Senn’s argument fails on both fronts.
Senn relies primarily on the Minnesota Supreme Court’s decision in Friedman v. Commissioner of Public Safety, 473 N.W.2d 828, 829, 836-37 (Minn.1991).[18] Joy Friedman was arrested in Minneapolis when she failed a preliminary breath test. Id. at 829. The police officer took her to the police station to take an ihtoxilyzer test. Id. The machine was in use, so they waited twenty-five minutes at the station. Id. During this time, Friedman asked what her rights were and whether she could consult an attorney. Id. The officer did not allow her to contact an attorney. Id. A different officer took Friedman into a videotaping room and read her the implied-consent advisory three times. Id. The implied-consent advisory stated she had. a right to consult an, attorney after testing. Id. Friedman said she did not understand the advisory and that she had been tested in the .squad car. Id, The. police considered Friedman’s .response a. refusal to.be tested, which resulted in a one-year revocation of her drivers’ license. Id.
The Minnesota Supreme Court noted, “As is often the casé, the driver at this critical stage looked to the police for guidance. An attorney, not a police officer, is the appropriate source of legal advice.” Id. at 833. The Court concluded a defendant is guaranteed a “limited right to counsel within a reasonable time before submitting to testing.” Id. at 837. The court explained the right to counsel as follows:- ;
[A]ny person who is required to decide whether he will submit to a chemical test ... shall have the right to consult with a lawyer of his own choosing before making that decision, provided that such a consultation does not unreasonably de *28 lay the administration of the test. The person must be informed of this right, and the police officers must assist in its vindication. The right to counsel will be considered vindicated if the person is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel. If counsel cannot be contacted within a reasonable time, the person may be required to make a decision regarding testing in the absence of counsel.
Id. at 835 (quoting Prideaux v. Dep’t of Pub. Safety, 310 Minn. 405, 247 N.W.2d 385, 394 (1976)).
Later Minnesota opinions have recognized the limited nature of the right to counsel in an implied-consent proceeding:
We need only consider the right to counsel at issue here, the right to counsel for a test decision, which is more limited in nature than the right to counsel at a plea hearing or at trial. In Friedman we recognized that “the evanescent nature of the evidence in DWI cases requires that the accused be given a limited amount of time in which to contact counsel.” The right is deemed forfeited if counsel is not contacted within a reasonable period of time, even if by no fault of the accused. There is no analogous durational limitation or forfeiture consequence associated with the right to counsel at a plea hearing or at trial.
State v. Schmidt, 712 N.W.2d 530, 538 (Minn.2006) (footnote omitted) (citations omitted) (quoting Friedman, 473 N.W.2d at 835). Significantly, Minnesota courts permit the police or jailer to monitor the detainee’s phone calls with counsel. Comm’r of Pub. Safety v. Campbell, 494 N.W.2d 268, 270 (Minn.1992). Evidence of the driver’s telephonic statements with counsel may be suppressed during the criminal trial. Id. at 269-70 (“[T]he arres-tee’s rights will be sufficiently protected by the subsequent exclusion of any overheard statements or any fruits of those statements.”). This does not help Senn. Senn was tried on the minutes of testimony. He made inculpatory statements during his phone call, but none of those admissions were included in the minutes.
The right to counsel articulated in Friedman and its progeny is no broader than the limited statutory right to counsel under Iowa Code section 804.20. If this proceeding had occurred in Minnesota, Senn would have no remedy. Senn was provided with a phone, offered a phone book, and given ample time to reach an attorney. In fact, Senn did reach his attorney and was allowed to consult with the attorney for almost a half hour. None of Senn’s statements made to his lawyer on the phone call were used in the criminal case. Under the Minnesota precedent, Senn would have no remedy for Officer Guppy’s presence in the room during the phone call.
Senn likely would fare better under Oregon’s broader state constitutional right to counsel:[19]
We hold that, under the right to counsel clause in Article I, section 11 [of the Oregon Constitution], an arrested driver has the right upon request to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test. Because evidence of an arrested driver’s blood alcohol dissipates over time, the state is not required to wait for a long period of time before administering the test.
*29 State v. Spencer, 305 Or. 59, 750 P.2d 147, 155-56 (1988) (en banc) (footnote omitted). This right encompasses the ability to “consult with counsel in private,” including over the phone. State v. Durbin, 335 Or. 183, 63 P.3d 576, 579 (2003). The Oregon court said that “the purpose of the lawyer-client privilege cannot be fulfilled unless the communications between a client and a lawyer are confidential.” Id.
But the Oregon right to counsel is not absolute because that state will not provide a lawyer at the state’s expense for indigent persons during chemical testing, and the right may be forfeited. State v. Smalls, 201 Or.App. 652, 120 P.3d 506, 508, 510-11 (2005); see Spencer, 750 P.2d at 155 (“In view of the exigencies attendant to the breath test process and the extraordinary expense [appointing counsel to indigents] would entail, we doubt that the Supreme Court would take the dictates of Gideon v. Wainwright ... and its progeny that far”). The right to counsel in Oregon is limited to those who can afford lawyers.
New York has extended its state constitutional right to counsel to persons who are taken into custody,, whether “as an ‘accused,’ a ‘suspect,’ or a ‘witness:’ ” People v. Hobson, 39 N.Y.2d 479, 384 N.Y.S.2d 419, 348 N.E.2d 894, 897 (1976). The detainee is generally entitled to speak privately with counsel by phone. People v. O’Neil, 43 Misc.3d 693, 986 N.Y.S.2d 302, 312 (Dist.Ct.2014), Senn does not cite or rely on New York precedent, presumably because of the. textual differences in that state’s constitution, which combines multiple rights — including due process, self-incrimination, and the right to counsel — into one provision.[20] Indeed, New York’s highest court.has'stated, ;
*30 The Right to Counsel Clause in the State Constitution is more restrictive than that guaranteed by the Sixth Amendment to the United States Constitution. Nevertheless, by resting the right upon this State’s constitutional provisions guaranteeing the privilege against self-incrimination, the right to assistance of counsel and due process of ■law we have provided, protection to ac-cuseds far more expansive than the Federal counterpart.
People v. Bing, 76 N.Y.2d 331, 559 N.Y.S.2d 474, 558 N.E.2d 1011, 1014-15 (1990) (footnote omitted) (citations omitted). By contrast, the Iowa Constitution has separate provisions for due process and the right to counsel. Compare N.Y. Const, art. I, § ■ 6 (including provisions regarding grand jury, waiver of indictment, right to counsel, informing accused, double jeopardy, self-incrimination, waiver of immunity by public officers, and due process of law), with Iowa Const, art. I, § 9 (providing right of trial by jury- and due process of law); id. art. T, § 10 (providing rights of persons accused).
,Senn relies solely on the right-to-counsel provision in article I, section 10 of the Iowa Constitution; He does not rely on the ’ 'due process' clause, the privilege against self-incrimination, or the right to be free of unreasonable searches and seizures. This case does not involve a police interrogation, blood draw, plea bargaining, or a lineup. New York’s provision combining disparate rights is a poor interpretive analogue here.
Moreover, the combined New York provision more broadly refers repeatedly to “a person” in place of the narrower term used for a subset of persons who have been formally charged, “the party accused.” Compare N.Y. Const, art. I, § 6 (referring several times to a “person” and once to “the party accused”), with Iowa Const, art. I,- § 10 (referring only to “the accused”). For those reasons, the New York cases are inapposite.
Regardless, New York provides only a limited right to counsel for motorists 'arrested for suspicion of drunk driving. People v. Smith, 18 N.Y.3d 544, 942 N.Y.S.2d 426, 965 N.E.2d 928, 931 (2012). “[T]here is no absolute right to refuse to take the test until an attorney is actually consulted, nor can a defendant use a request for legal consultation to significantly postpone testing.” Id. If the defendant is unable to contact an attorney, the defendant “can be required to make a decision without the benefit of counsel’s advice.” Id., 942 N.Y.S.2d 426, 965 N.E.2d at 931-32.[21]
Senn would be entitled to reversal under the caselaw. of only two other states — ■ Oregon and New York. We are not persuaded to follow those outliers.
*31 D. Practical Problems. We also consider the practical problems that would arise by recognizing a broader independent state constitutional right to counsel during implied-consent chemical testing. Senn claims that “an individual is entitled to, at a minimum, a private consultation with counsel at the time at which the State invokes implied consent” under the Iowa Constitution.
First, any Iowa constitutionally based right to counsel should apply equally to rich and poor alike. ■ See Iowa Code § 63.6 (requiring judges to take ah oath to “support the Constitution of the United States and the Constitution of the State of Iowa, and ... administer justice according to the law, equally to the rich' and the poor”). Iowa has recognized the right to appointed counsel for indigents at government expense in felony cases since 1850. See Hall v. Washington County, 2 Greene 473, 478-79 (Iowa 1850). We recently extended that right to indigents facing misdemeanor charges with ■ potential incarceration. Young, 863 N.W.2d at 281; see also Luis v. United States, 578 U.S.-,-, 136 S.Ct. 1083, 1089, 194 L.Ed.2d 256, 263 (2016) (plurality opinion) (“[W]e have-understood the right [to counsel] to require that the Government provide counsel for an indigent defendant accused of all but the least serious crimes — ”). A first offense OWI carries a potential-jail sentence. Thus, if we hold an individual is constitutionally , entitled to a private consultation with legal counsel at the time the State invokes implied consent, the State would need to ensure that public defenders or court-appointed lawyers are available twenty-four hours a day to field calls from detained motorists, typically late at night. See Smalls, 120 P.3d at 511.
In addition, we would need to provide continuous court and public defender access to process applications for court-appointed counsel. See Iowa Code § 815.10 (providing for “Mppointment of counsel by court”). The State cannot wait until -the next morning to effectively test for evidence of blood alcohol content because the amount drops over time. See Vietor, 261 N.W.2d at 831 (holding the right to counsel “must be balanced against the practical consideration that a chemical test is to be administered within two hours of the time of arrest or not at all”).' It simply is infeasible to assure indigent motorists statewide that lawyers will be available at government expense at any time of the day or night to advise them whether to submit to the breath test.
Second, if Senn was entitled to a private consultation with counsel over the phone, the police or jailers would have to determine who is on the other end of the line for each phone call made. Iowa Code section 804.20 applies to all detainees, not just motorists suspected of impaired driving. It’ is easy to imagine detainees taking advantage of-private phone calls to inform confederates to flee or get rid of evidence.
IV. Conclusion.
For these reasons, we conclude the right to counsel under article I, section 10 of the Iowa Constitution does not attach until formal- charges have been filed by the state in court. Accordingly, the arresting officer in this case did not violate Senn’s constitutional right to counsel by remaining in the room during Senn’s phone call with a lawyer. Senn’s constitutional challenge to Iowa Code section 804.20 fails. We therefore affirm his conviction.
DISTRICT COURT JUDGMENT AFFIRMED.
MANSFIELD and ZAGER, JJ., join this opinion. CADY, C.J., files a special concurrence. WIGGINS, J., files a dissenting opinion in which HECHT and *32 APPEL, JJ., join. APPEL, J., files a separate dissenting opinion in which WIGGINS and HECHT, JJ., join.

. See Iowa Code § 321J.6 ("A person who operates a motor vehicle in this state under circumstances which give reasonable grounds to believe that the person has been operating a motor vehicle [while intoxicated] is deemed to have given consent to the withdrawal of ■ specimens of the person’s blood, breath, or urine and to a chemical test or tests of the specimens for the purpose of determining the alcohol concentration or presence of a controlled substance or other drugs_”).

. See Iowa Code §§ 3?1 J.9(l)(fc), ,12(1)(⅛).

. This court’s decision in State v. Hellstern, 856 N.W.2d 355, 360-65 (Iowa 2014), which addressed Iowa Code section 804.20, was filed two weeks before the suppression hearing.

. The Sixth Amendment to the United States Constitution, entitled "Jury trials for crimes, and procedural rights,” states, *8 In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence. U.S. Const, amend. VI.

. The majority in Wing decided the case based on an interpretation of the speedy indictment rule and corresponding statutes. Wing, 791 N.W.2d at 246, 249. The majority noted the state and federal constitutional underpinnings of the speedy indictment rule but did not rely on constitutional provisions to decide the case. See id.

. In Gottschalk, the opinion referred to the Iowa counterpart to the Sixth Amendment of the Federal Constitution as article 1/ section 9. 140 N.W.2d at 869. Based on the analysis in the opinion, the court was referring to article I, section 10. See id, at 869-70.

. There were two men named Mr. Clarke and one named Mr. Clark at the Iowa convention. Mr. Clark of Allamakee County and Mr. Clarke of Henry County actively debated article I, section 10 of the Iowa Constitution. See generally 1 The Debates, at 119-22.

. The Fugitive Slave Act of 1850 required slave owners to provide “satisfactory proof” before a slave could be “reclaimed” from another jurisdiction.. See Act of Sept. 18, 1850, ch, 60, §4 (requiring satisfactory proof); id. § 6 (allowing slave owners to “pursue and reclaim” fugitive slaves). Although the Act permitted commissioners to , determine whether a slave could be “re- . claimed,” the commissioners were "authorized to exercise the powers that any justice of the peace, or other magistrate of any of the United States, may exercise in respect to offenders for any crime or offense against the . United States,” including the "power to ... take acknowledgments of bail and affidavits, and to take depositions of witnesses in civil causes.” Id, §§ 1-2, 4.

. In Missouri v. McNeely, the United States Supreme Court held “that in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant" under the Fourth Amendment. 567 U.S. -, -, 133 S.Ct. 1552, 1568, 185 L.Ed.2d 696, 715 (2013). The Court said that "a compelled physical intrusion beneath McNeely’s skin and into his veins to obtain a sample of his blood for use as evidence in a criminal investigation ... implicate[d] an individual’s ‘most personal and deep-rooted expectations of privacy.’” Id. at ——, 133 S.Ct. at 1558, 185 L.Ed.2d at 704 (quoting Winston v. Lee, 470 U.S. 753, 760, 105 S.Ct. 1611, 1616, 84 L.Ed.2d 662, 668 (1985)); see also Birchfield, 579 U.S. at -, 136 S.Ct. at 2165, 195 L.Ed.2d at-("íhe impact of breath tests on privacy is slight_Blood tests are significantly more intrusive, and their reasonable *21 ness must-be judged in light of the availability of the less invasive alternative of a breath test.”). Senn has not raised any Fourth Amendment challenge and submitted to a breath test, not a blood draw. Therefore, McNeely is inapposite.

. See, e.g., Rackoff v, State, 281 Ga. 306, 637 S.E.2d 706, 708-09 (2006) ("Rackoff was not entitled to consult with a lawyer before deciding whether to submit to a breath test under the Sixth Amendment or the Georgia Constitution,”); State v. Severino, 56 Haw. 378, 537 P.2d 1187, 1189 (1975) (“[A] motorist is not entitled to consult with counsel before decid- ' ing to submit to the chemical test prescribed by the implied consent statute.’-’); Commonwealth v. Brazelton, 404 Mass. 783, 537 N.E.2d 142, 143 (1989) ("The moment at which a person must decide to take or to refuse to take a breathalyzer test is not a critical stage in the criminal process.”); State v. Armfteld, 214 Mont. 229, 693 P.2d 1226, 1228 (1984) ("Neither the United States nor Montana constitutions guarantee a defendant the opportunity to seek an attorney’s advice before deciding whether to submit or not to submit to a blood-alcohol test.”), abrogated on other grounds by State v. Reavley, 318 Mont. 150, 79 P.3d 270, 279 (2003); Wiseman v. Sullivan, 190 Neb. 724, 211 N.W.2d 906, 910 (1973) ("[A] driver who has been arrested for operating a motor vehicle upon a public street or highway while under the influence of intoxicating liquor .is not entitled -under either *23 the federal or state Constitutions or the implied consent statute to consult with a lawyer previous to giving a sample of blood, breath, or urine under the implied consent act, or to have a lawyer present during the. giving of the sample.”); State v. Leavitt, 107 N.J. 534, 527 A.2d 403, 407 (1987) (holding ''[n]o provision of the New Jersey Constitution or statutes furnishes” the guarantee to assistance of counsel when “a motorist [is] requested to furnish a breath or blood sample”); State v. Howren, 312 N.C. 454, 323 S.E.2d 335, 336-37 (1984) (holding the right to counsel had not attached under either the United States or North Carolina Constitutions, reasoning that "[t]he fact that as a matter of grace.the legislature has given defendant the right to refuse to submit to chemical analysis, and suffer the consequences for refusing, does not convert this step in the investigation into a critical stage in the prosecution”); Commonwealth v. McCoy, 601 Pa. 540, 975 A.2d 586, 591 (2009) ("Submission to a chemical test upon being stopped for suspected DUI is an evidence-gathering circumstance, prior to the filing of any formal adversarial judicial proceedings, and as such does not constitute a critical stage for putposes of the right to counsel.”); Dunn v. Petit, 120 R.I. 486, 388 A.2d 809, 812 (1978) ("[W]e reject petitioners’ argument that there is a [state or federal] constitutional right to counsel at the moment of decision concerning submission. ’ to a breathalyzer test....”); State v. Frasier, 914 S.W.2d 467, 471 (Tenn.1996) ("[W]e hold that a person arrested without a warrant on a reasonable suspicion of DUI does not have a due process right under the Tennessee Constitution to consult with an attorney before making the decision.”); Mogard v. City of, Laramie, 32 P.3d 313, 325 (Wyo.2001) (affirming a "bright-line” rule that right to counsel "under the Sixth Amendment .and Wyo[ming] Constitution art. I, § .10 is only required once charges are filed” and does not “extend to the time at which [an] arrestee is deciding whether to submit to chemical testing”); cf. Law v. City of Danville, 212 Va. 702, 187 S.E.2d 197, 198 (1972) ("[D]enial of the right to consult with counsel before an ■ accused decides whether to take a blood test does not violate the Sixth Amendment ... [n]or .. . impair an accused's right ,■.. guaranteed by ... the State Constitution.”).

. See, e.g., People v. Anderson, 842 P.2d 621, 622 & n. 4 (Colo. 1992) (en banc) (citing the federal standard and noting "[w]e have adopted the same test for determining whether the right to counsel attaches under article II, section 16 of the Colorado Constitution”); Packoff, 637 S.E.2d at 708-09 (applying federal attachment standard); State v. Luton, 83 Hawaii 443, 927 P.2d 844, 849 (1996) (applying the federal attachment standard to claim under the Hawaii Constitution); Commonwealth v. Jones, 403 Mass. 279, 526 N.E.2d 1288, 1292 (1988) (noting the right to counsel under the Massachusetts Constitution “attaches only at or after the time that adversary judicial proceedings have been initiated against him” (quoting Kirby, 406 U.S. at 688, 92 S.Ct. at 1881, 32 L.Ed.2d at 417)); People v. Cheatham, 453 Mich. 1, 551 N.W.2d 355, 359 n. 8 (1996) (noting the right to counsel under the Michigan Constitution "attaches only at or after the initiation of adversary judicial proceedings by way of formal charge, preliminary hearing, indictment, information, or' arraignment" (quoting People v. Wright, 441 Mich. 140; 490 N.W.2d 351, 365 (1992) (Riley, J., dissenting))); State v. Delisle, 137 N.H. 549, 630 A.2d 767, 767 (1993) (“A defendant’s right to assistance of counsel attaches , ‘by virtue of the commencement of formal criminal proceedings,’ ” (quoting State v. Bruneau, 131 N.H. 104, 552 A.2d 585, 587-88 (1988))); McCoy, 975 A.2d at 590 (noting the right to counsel -under the Pennsylvania Constitution is "coterminous with the Sixth Amendment right for purposes of determining when the right attaches”); State v. Stephenson, 878 S,W.2d 530, 547 (Tenn.1994) (holding the state constitutional right to counsel was inapplicable because "[n]o adversary judicial proceedings had been initiated against the defendant at the time of the alleged ‘invocation’ of his right to counsel”), abrogated on other grounds by State v. Saylor, 117 S.W.3d 239, 245-46 (Tenn.2003); State v, Parizo, 163 Vt. 103, 655 A.2d 716, 717 (1994) (holding that the state constitutional right to counsel does not attach until there is a "criminal prosecution” as ■ contemplated in (Kirby); State v. Earls, 116 Wash.2d 364, 805 P.2d 211, 215 & n. 5 (1991) (en banc) ("The right to counsel under [the state constitution] also attaches only after the initiation of formal judicial proceedings.”); State ex rel. Bess v. Legursky, 195 W.Va. 435, 465 S.E.2d 892, 898 (1995) (holding the right to counsel does not *24 attach until a “critical stage in the adversary proceedings”) (quoting State ex rel. Daniel v. Legursky, 195 W.Va. 314, 465 S.E.2d 416, 423 (1995))); Mogard, 32 P.3d at 322 (“A request for counsel made prior to the commencement of adversarial criminal proceedings does not invoke the right to counsel ... under [the state constitution.]”).

. Twelve of the thirteen state court decisions cited by the Pennsylvania Supreme Court remain good law. See Anderson, 842 P.2d at 622 n. 4; Smith v. State, 699 So.2d 629, 638 (Fla.1997); Luton, 927 P.2d at 849-50; Jones, 526 N.E.2d at 1292; Cheatham, 551 N.W.2d at 359 n. 8; State v. Warren, 348 N.C. 80, 499 S.E.2d 431, 439-40 (1998); Stephenson, 878 S.W.2d at 547-48; Poullard v. State, 833 S.W.2d 270, 271-72 (Tex.App.1992); Parizo, 655 A.2d at 717; Earls, 805 P.2d at 215 & n. 5; Bess, 465 S.E.2d at 898; Prime v. State, 767 P.2d 149, 152-53 (Wyo.1989). As we explain below, Minnesota departed from the Sixth Amendment analysis in Friedman v. Commissioner of Public Safety, 473 N.W.2d 828, 836-37 (Minn.1991). Florida has recognized a' broader right to counsel under its state constitution. See Smith, 699 So.2d at 638 (noting that the Florida right to counsel will attach “as soon as feasible after custodial restraint”).

. The right-to-counsel provision in Pennsylvania’s constitution, entitled "Rights of accused in criminal prosecutions,” states, “In all criminal prosecutions the accused hath a right to be heard by himself and his counsel. ... ” Pa. Const, art. I, § 9.

.- The right-to-counsel provision in Texas, entitled "Rights of accused in criminal prosecutions,” states, “In all criminal prosecutions the accused shall have ... the right of being heard by himself or counsel, or both.’...” Tex. Const, art. I, § 10.

.Maryland has a limited right , to counsel during implied-consent proceedings based on its state constitutional right to due process. Sites v. State, 300 Md. 702, 481 A.2d 1.92, 200 (1984). Subsequent, cases have called Sites into doubt. See Motor Vehicle Admin, v. Deering, 438 Md. 611, 92 A.3d 495, 507 (2014) ("Given the scarce support for th[e] analysis of the due process clause of the federal Constitution, the Sites Court’s rationale rests on a precarious footing, Of course, because the Sites decision was also based on Article 24, it is conceivable that this Court could hold that the State constitution confers such a right, even if the federal Constitution does not.”). The independent constitutional right to counsel in Maryland is based on their due process provision. Id. Senn did not argue the Iowa due process clause in his motion to suppress. Accordingly, Sites does not support his argument.

. The Florida Constitution provides for the right to counsel in a provision, entitled "Rights of accused and of victims”: "In all criminal prosecutions[,] the accused shall ... have the right ... to be heard in person, by counsel or both_” Fla. Const, art. I, § 16(a),

. When Florida expanded its rule, the court noted that there was a rule of criminal procedure that provided counsel to arrestees who were booked but not formally charged, Traylor, 596 So.2d at 970- n. 38; see also Fla.R.Crim. P. 3.111(a).

. The Minnesota right-to-counsel provision, entitled "Rights of accused in criminal prosecutions,” states, "In all criminal prosecutions[,] ... [t]he accused shall enjoy the right ... to have compulsory process for obtaining witnesses-in his favor and to have the assistance of counsel in his defense,” Minn. Const-, art. I, § 6. -

. The right to counsel in the Oregon Constitution is entitled "Rights of Accused in Criminal Prosecution”: "In all criminal prosecutions, the accused shall have the right ... to be heard by himself and counsel_” Or. Const, art. I, § 11.

. New York’s right-to-counsel provision, entitled "Grand Jury; Waiver of Indictment; Right to Counsel; Informing Accused; Double Jeopardy; Self-Incrimination; Waiver of Immunity by Public Officers; Due Process of Law,” states,
No person shall be held to answer for a capital or otherwise infamous crime (except in cases of impeachment, and in cases of militia when in actual service, and the land, air and naval forces in time of war, or which this state may keep with the consent of congress in time of peace, and in cases of petit larceny trader the regulation of the legislature), unless on indictment of a grand jury, except that a person held for the action of a grand jury upon a charge for such an offense, other than one punishable by death or life imprisonment, with the consent of the district attorney, may waive indictment by a grand jury and consent to be prosecuted on an information filed by the district attorney; such waiver shall be evidenced by written instrument signed by the defendant in open court in the presence of his or her counsel. In any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel as in civil actions and shall be informed of the nature, and cause of the accusation and be confronted with the wit-
nesses against him or her. No person shall be subject to be twice put in jeopardy for the same offense; nor shall he or she be compelled in any criminal case to be a witness against himself or herself, providing, that any public officer who, upon being called before a grand jury to testify concerning the 'conduct of his or her present office or of any public office held by him or her within five years prior to such grand jury call to testify, or the performance of his or her official duties in any such present or prior offices, refuses to sign a' waiver of immunity against subsequent criminal prosecution, or to answer any relevant question concerning such matters before such grand jury, shall by virtue of such refusal, be disqualified from holding any other public office or public employment for a period of five years from the date of such refusal to sign a waiver of, immunity against subsequent prosecution, or to answer, any relevant. question concerning such matters before such grand jury, and shall be removed from his or her present office by the appropriate authority or shall forfeit his or her present office at the suit of the attorney-general. '
The power of grand juries to inquire into the wilful misconduct in office of public
*30 officers, and to find indictments or to direct the filing of informations' in connection with such inquiries, shall never be suspended or impaired by law.' No person shall be deprived Of life, liberty or property without due process of law.
N.Y. Const, art. I, §-6 (emphasis added).

. New York’s remedy for a failure to provide private access to counsel depends on whether the arrestee takes the test or refuses. If the defendant takes the test, the court will generally suppress all statements and the test results. See People v. Moffitt, 50 Misc.3d 803, 19 N.Y.S.3d 713, 719-20 (Crim.Ct.2015) (suppressing test results, statements made to lawyer, and portion of video depicting conversation); People v. Washington, 107 A.D.3d 4, 964 N.Y.S.2d 176, 186 (2013) (suppressing test results), But if the arrestee refuses to take the test, the court will suppress the statements made to his or her lawyer but not the refusal itself, O'Neil, 986 N.Y.S.2d at 312 & n. 3 (suppressing statements made to counsel but noting the violation of the defendant's right to counsel was "not a basis for suppression of the refusal” to take the test).